RAY PALMATEER, Plaintiff-Appellee, v. INTERNATIONAL HARVESTER COMPANY, Defendant-Appellant.

Third District   No. 3—85—0293

Opinion filed February 11, 1986.

Stuart R. Lefstein, of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellant.

Gerald J. Meehan and William M. Walker, both of Coryn, Walker & Meehan, of Rock Island, for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Defendant International Harvester Company (IH) appeals the grant of summary judgment in favor of plaintiff, Ray Palmateer (Palmateer). We reverse.

Palmateer brought this action against IH alleging retaliatory discharge. The gravamen of the complaint is that IH fired Palmateer, an at-will employee, for cooperating with the police in investigating a possible theft suspect. An earlier motion to dismiss was granted by the trial court and affirmed by this court. (*Palmateer v. International Harvester Co.* (1980), 85 Ill. App. 3d 50, 406 N.E.2d 595.) The supreme court reversed, finding that the complaint sufficiently stated a cause of action. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.

Subsequent to the supreme court's reversal, discovery was held. Depositions were taken of Palmateer and various executives at the East Moline Works, the plant where Palmateer was employed. Palmateer and IH both moved for summary judgment. The trial court denied IH's motion and granted Palmateer's. The trial court found that Palmateer had clearly shown that he was fired after and as a result of the fact he had contacted the police. IH brings this appeal.

Ray Palmateer was a foreman at IH's East Moline Works. In 1977, Palmateer told his brother-in-law, a police officer, that one worker in his department, a Richard Stover, told him of another worker, Ken Roberts, who was possibly in possession of stolen mer-

chandise. Palmateer then asked Stover to purchase this merchandise. Palmateer states that he did so at the request of the police. The local union filed a grievance on the matter, informing the plant management of Palmateer's actions.

After meetings among the executives of the plant, and between them and Palmateer, the plaintiff was discharged. Palmateer claims that he was fired because of his cooperation with the police. IH denied the allegation, pointing to prior managerial misconduct by Palmateer and IH's specific lack of knowledge of Palmateer's cooperation with the police.

■ The lone issue on appeal is whether summary judgment was appropriate in this case. The test for summary judgment has been reiterated many times in this State. "[I]f what is contained in the pleading and affidavits would have constituted all the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict, then a summary judgment should be entered. [Citation.]" (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497.) Facts unrelated to the essential elements of the cause of action are immaterial; only the existence of material factual questions preclude summary judgment. (*Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 456 N.E.2d 348.) "On appeal, this court will affirm the trial court's decision to grant summary judgment only if, after scrutinizing the record, we are absolutely convinced there is no genuine issue as to any material fact and that the movant was, indeed, entitled to judgment as a matter of law." *Thompson v. Platt* (1983), 116 Ill. App. 3d 662, 664, 452 N.E.2d 733.

Both parties agree that central to this case is the determination of IH's reason for firing Palmateer. The trial court, in its opinion, stated that it was clear Palmateer was fired "only because of the police contact." In our review of the record, this fact is not so apparent. As the record contains only the various pleadings and depositions, we are as able to review the evidence as the trial court.

Palmateer's complaint states that IH's reasons were that he had informed police of suspected criminal activities, that he had agreed to assist the police, and that he intended to testify if necessary. He argues that this was his civic duty and that showing he was fired after IH learned of his cooperation with the police is sufficient. We believe he must not only show that time frame, but he must also show that he was fired *because* he went to the police.

The two central figures in the controversy were deposed, Palmateer and Matthew Glogowski, the plant manager. Glogowski made the

decision to fire Palmateer. There is conflict between the two as to when the IH executives became aware of Palmateer's contact with the police. However, as we are analyzing the case in its summary judgment posture, the depositions will be viewed more favorably to IH.

Glogowski first became aware of the situation when he was informed of the union grievance against Palmateer. The grievance was that Palmateer was trying to get information as to whether one man could obtain stolen tools from another, and that if the first man could do so, he could earn a profit from it. The grievance was corroborated by Palmateer's immediate supervisor's report. The executives were concerned about Palmateer's using men in his supervisory area against one another. Glogowski then met with Palmateer. At that point, Glogowski first learned of any possible police involvement.

Glogowski felt that Palmateer would be unfit to maintain a supervisory position. Glogowski also believed that Palmateer had lost the trust of his workers by his actions. The plant manager stated that it was wrong for a supervisor to play one man off against another. This would cause workers to lose the confidence to freely and confidentially talk with a supervisor about a problem. Palmateer also had poor relations with the union and the workers. In 1975, incidents occurred where Palmateer acted disrespectfully to a union steward. The sum of these factors made Palmateer's continuing in management imprudent. Glogowski finally stated that the involvement with the police had no bearing on the decision to terminate, even assuming Palmateer had told the truth about it.

■ We feel that the Glogowski's deposition created an issue of material fact. The issue can be defined as whether IH fired Palmateer for communicating and cooperating with the police, or whether Palmateer was no longer effective as a foreman, thus requiring his dismissal. More concisely stated, what was Glogowski's intent in dismissing Palmateer? The issue of motive or intent is a question of material fact, not normally subject to summary judgment. *Darnell v. Impact Industries, Inc.* (1983), 119 Ill. App. 3d 763, 457 N.E.2d 125, *aff'd* (1985), 105 Ill. 2d 158, 473 N.E.2d 935; *People v. Lundblade* (1981), 95 Ill. App. 3d 474, 420 N.E.2d 784 (intent to defraud is an issue for the fact-finder); *Luthy v. Keehner* (1980), 90 Ill. App. 3d 127, 412 N.E.2d 1091 (question on intent to create an easement precluded summary judgment); *Sennot v. Collet-Oser* (1976), 36 Ill. App. 3d 928, 344 N.E.2d 783 (no question existed as to settlor's intent-summary judgment proper).

■ As with any other tort, Palmateer has to show what the prox-

imate cause of the injury was. With the injury being his dismissal, Palmateer must show he was discharged for informing the police of the suspected criminal violation, for cooperating in the gathering of evidence and in the prosecution. As stated earlier, these are questions of material fact. Examined most favorably to IH, the evidence at this point merely shows that Palmateer was discharged after, but not necessarily because IH management learned of his contact with the police. This in and of itself is insufficient. Palmateer has failed to show any other causal connection. With the evidence in conflict as to causation, we cannot say the record so favored Palmateer on this issue that summary judgment was mandated.

■ In further analyzing the record, we find another inference that exists in IH's favor. In doing so, we are not straining to adduce remote factual possibilities that would defeat the motion. (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 407 N.E.2d 1031.) We note the failure of Palmateer to produce anything in the record, other than his own self-serving statements, demonstrating that there was involvement with the police. Essential to this action is proof that Palmateer was gathering evidence according to police suggestions. Without it, he has failed to make his case, especially in light of this particular procedural posture. For this reason also, summary judgment was improperly granted.

■ Finally, IH challenges that part of the ruling that finds Palmateer acted in good faith in his contact with the police. The argument is derived from the language of the opinion of the supreme court in deciding the motion to dismiss. "[P]ublic policy nevertheless favors citizen crime fighters. '*** Persons acting in good faith who *** believe crimes have been committed should not be deterred from reporting them ***' [citation]." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 132, 421 N.E.2d 876.) We agree with IH that in order to be insulated from being wrongfully discharged, reports to law enforcement agencies should be made in good faith. Palmateer also does not challenge this assertion, claiming that the evidence shows Palmateer to have acted in good faith. Someone acting in bad faith could disrupt the operations of a business by reporting to the police co-workers with whom he did not get along. This is not the person a retaliatory discharge case was meant to protect.

The record also shows facts on the good-faith question have to do with Palmateer's suspicion of Ken Roberts, the person whom he thought to have the stolen tools. Prior to the firing, Palmateer had purchased a new car. Someone had fired shotgun rounds at the car, blowing out the windows. Although unproven, Palmateer suspected

Roberts. Palmateer also suspected Roberts of cutting up his new ski jacket. Palmateer admittedly did not get along with Roberts and had recurring difficulties with Roberts on the production line.

Further, IH produced the deposition of the person that supposedly informed Palmateer of the stolen tools, Richard Stover. Stover denied passing information to Palmateer, claiming he was approached by Palmateer. Stover also told of Palmateer offering him some money to drive a car to enable Palmateer to "blow Roberts' car up."

IH has put enough on the record that a finding in favor of Palmateer on the question of good faith was not clearly evident. Taking the evidence most favorably to IH, there is a strong inference that Palmateer's actions may have been motivated by a desire for revenge against Roberts. This, too, is a question of intent for the trier of fact. As such, the trial judge erred in making a summary ruling on this question.

Therefore, the circuit court of Rock Island County is hereby reversed. The cause is remanded for further proceedings consistent with this opinion.

Reversed.

SCOTT and STOUDER, JJ., concur.