HERBERT HUGO, Plaintiff-Appellant, v. JIM TOMASZEWSKI, d/b/a Hoyleton AG Store, Defendant-Appellee.

Fifth District No. 5—86—0720

Opinion filed May 27, 1987.

James B. Wham and Janie F. Smith, both of Wham & Wham, of Centralia, for appellant.

Jerome E. McDonald, of Campbell, Furnall, Moore & Jacobsen, P.C., of Mt. Vernon, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Herbert Hugo, filed a complaint in the circuit court of Washington County against defendant, Jim Tomaszewski, d/b/a Hoyleton AG Store, alleging retaliatory discharge and a breach of the implied covenant of good faith and fair dealing. The trial court struck the portions of plaintiff's complaint referring to the covenant of good faith and fair dealing, then granted defendant's motion for summary judgment on the retaliatory discharge claim. Plaintiff appeals contending a genuine issue of material fact remains in the case precluding summary judgment. He also asks us to recognize a new cause of action for at-will employees based upon the breach of the implied covenant of good faith and fair dealing.

Defendant owns a retail establishment in Hoyleton which is a combined grocery store, hardware store, and dry-goods store. Defendant purchased the business from Edgar Reinkensmeyer in April of 1984. Plaintiff had begun working in the store under Reinkensmeyer's ownership in 1962 and was retained by defendant after defendant purchased the business, although some of the terms of plaintiff's employment changed under the new owner, including the elimination of some benefits.

On January 9, 1985, plaintiff broke his hip when he fell on ice which had accumulated in the store's parking lot. Surgery was performed which repaired the hip, but plaintiff was unable to return to work during his recovery. Plaintiff received temporary total disability payments through defendant's insurance carrier retroactive to January 9, 1985. In the summer of 1985, a doctor gave plaintiff a partial release allowing him to return to work if he followed certain restrictions. Plaintiff was not to lift anything weighing over 50 pounds and was not to stay on his feet longer than four hours at a time.

On July 12, 1985, plaintiff, along with Dorothy Hunt, a rehabilitation specialist who had been assisting plaintiff in his recovery, went to the store to give defendant this work release. Defendant,

after looking at the release, told plaintiff he was being laid off. The facts to this point are not in dispute.

In a deposition, plaintiff stated that after the accident he contacted defendant, who notified the workers' compensation carrier, and that plaintiff received benefits during 1985. A doctor gave plaintiff a restrictive work release in July of 1985 and a total work release on December 6, 1985. Plaintiff also stated that he went to the store in May of 1985 and asked defendant, "Have I still got a job?" Defendant replied, "I guess so." Plaintiff stated that on July 12, 1985, when he gave defendant the restrictive work release, defendant told him "business had fallen off, and he had to lay me off." Plaintiff admitted in his deposition that the butcher at the store as well as the former owner of the business had told him business had "fallen off." Counsel for defendant asked plaintiff, "And as far as you know, that [drop in business] was the only reason you were laid off?" Plaintiff responded, "Yes." In an affidavit subsequent to his deposition, plaintiff stated: "Although I do not have personal knowledge of Mr. Tomaszewski's motives for discharging me, the reason that I stated in my deposition testimony that I knew of no reason why I was fired other than what I was told is because I was trying to answer the questions posed to me as truthfully as I could. I cannot read Mr. Tomaszewski's mind. I believe, based on the circumstances surrounding my firing, that the only reason he discharged me is because I was pursuing my Worker's Compensation remedies against him." In his affidavit plaintiff also stated that on July 12, 1985, after he handed defendant the work release, defendant "looked it over and then discharged me on the spot." Plaintiff stated that he had talked by telephone with defendant several times after the accident and that defendant never told plaintiff his job was in jeopardy or that business was bad.

Dorothy Hunt, the rehabilitation specialist, stated in an affidavit that defendant had told her plaintiff would need a work release before he could return to work. She accompanied plaintiff to the store on July 12, 1985, and according to Hunt, defendant looked at the release, then said to plaintiff, "I'll have to let you go."

Defendant stated in a deposition that between the time he bought the store and the time of plaintiff's accident, business had declined 20% to 25%, with the biggest decline in the hardware department, which is where plaintiff worked. Defendant stated that plaintiff had come into the store after the accident and asked, "Will I have my job?" Defendant replied, "I'll see." In his deposition, defendant admits he considered plaintiff to be an employee of the

store as late as April of 1985. Defendant stated that although he had studied the declining business situation "probably for a long time," that "I guess you could say I made that decision [to lay off plaintiff] that morning when he was released from the doctors." He told plaintiff that because business was down he would "have to lay him off."

Plaintiff filed a complaint alleging retaliatory discharge in that he was discharged for exercising his rights granted to him by the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). He also alleged a breach of the implied covenant of good faith and fair dealing in that defendant discharged him without reasonable cause and gave him a false reason for the discharge. The trial court struck the portions of plaintiff's complaint referring to a violation of the implied covenant of good faith and fair dealing, then subsequently granted defendant's motion for summary judgment on the retaliatory discharge claim.

■ We first address whether summary judgment for defendant was proper on plaintiff's retaliatory discharge claim. Summary judgment is proper only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Because summary judgment is a drastic remedy, it is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto. *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958, 961.

■ Defendant does not dispute that a cause of action for retaliatory discharge exists for an employee who is discharged for filing a workers' compensation claim. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) However, defendant contends that there was no showing that plaintiff's exercise of his rights under the Workers' Compensation Act was the reason for his discharge. In *Palmateer v. International Harvester Co.* (1986), 140 Ill. App. 3d 857, 489 N.E.2d 474, the appellate court reviewed summary judgment which had been granted in favor of the plaintiff in a retaliatory discharge action. The court, in finding that there was a genuine issue regarding the employer's intent in dismissing the plaintiff, stated that "[t]he issue of motive or intent is a question of material fact, not normally subject to summary judgment." (140 Ill. App. 3d 857, 860, 489 N.E.2d 474, 476.) While in the present case we are reviewing summary judgment granted in favor of the employer, we

agree that the issue of the employer's motive in discharging an employee should not readily be the subject of summary judgment.

Defendant contends that there is no evidence of an improper motive on his part. Plaintiff counters that because he was discharged on the date he first became available for work, it can reasonably be inferred he was discharged because he had exercised his rights.

█ █ We agree that a *prima facie* case of retaliatory discharge may be established by showing a short time span between the exercise of the employee's rights under the Workers' Compensation Act and the employer's action discharging the employee. (See *Loyola University v. Human Rights Com.* (1986), 149 Ill. App. 3d 8, 17, 500 N.E.2d 639, 645 (where, in the context of a discrimination case brought under the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*), the court found that a *prima facie* case of discrimination based on retaliation may be established by showing a short time span between the filing of the charge by the employee and the employer's adverse action).) A plaintiff in a case such as this will often be required to rely heavily upon circumstantial evidence of the employer's intent, and the timing of the discharge in relation to other events will virtually always be a critical circumstance. It is true that in the present case, plaintiff had been receiving workers' compensation benefits for more than six months prior to his discharge. However, during that period, there was no reason for defendant to discharge plaintiff because plaintiff was unable to work and was not on the payroll. It could reasonably be found that defendant may have wanted to discharge plaintiff for receiving workers' compensation benefits but that he had no reason to discharge him until he reported for work on July 12, 1985. Defendant argues that discharging plaintiff on the day he returned to work is consistent with an inference that defendant intended to discharge plaintiff due to a decline in business but had no reason to do so until plaintiff attempted to get back on the payroll. However, where fair-minded people could draw different inferences from the facts presented, the issue should be submitted to the trier of fact. (*Larsen v. Vic Tanny International* (1984), 130 Ill. App. 3d 574, 577, 474 N.E.2d 729, 732.) Plaintiff also points to evidence that while he had 23 years' experience at the store, defendant hired a replacement worker for an employee who left the store after plaintiff's discharge without asking plaintiff to fill that opening and that other employees had far less seniority than plaintiff. We agree that defendant's failure to contact plaintiff regarding the next available opening at the

store after his discharge supports an inference that plaintiff was discharged for a reason other than a decline in business.

■ Defendant relies heavily upon the decision in *Cunningham v. Addressograph Multigraph Corp.* (1980), 87 Ill. App. 3d 396, 409 N.E.2d 89, where summary judgment in favor of an employer on a retaliatory discharge claim was affirmed. We note that in *Cunningham* the plaintiff had taken no steps toward filing a workers' compensation claim and had admitted violations of company policy justifying his discharge. In any event, to the extent the decision in *Cunningham* could be read to support summary judgment for defendant in the present case, we decline to follow it. We conclude there is a genuine issue as to whether defendant discharged plaintiff for exercising his rights under the Act, and we therefore reverse the order granting defendant summary judgment and remand for further proceedings.

■ Plaintiff also asks us to utilize this case to carve out a new exception to the at-will employee doctrine in Illinois. Plaintiff would have us expand a discharged employee's right to a cause of action far beyond the limits of retaliatory discharge to include a cause of action for an employer's breach of the implied covenant of good faith and fair dealing. This we decline to do. While the duty of good faith and fair dealing is included in every contract as a matter of law, it has been held that this duty does not create an independent cause of action in these circumstances. (*Powers v. Delnor Hospital* (1985), 135 Ill. App. 3d 317, 321, 481 N.E.2d 968, 971-72.) In addition to the opinion in *Powers*, other decisions of the appellate court rejecting such a cause of action include *Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 606, 440 N.E.2d 998, 1006, and *Dykstra v. Crestwood Bank* (1983), 117 Ill. App. 3d 821, 826, 454 N.E.2d 51, 55, where the court stated: "[W]e are reluctant to create an exception sounding in contract to the general rule that an at-will employment is terminable at any time for any or no cause that would be broader than the exception to that rule created by our supreme court when it recognized the tort of retaliatory discharge." We are further guided by our supreme court's decision in *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356, where the court stated: "Contrary to plaintiffs' assertion, however, this court has not, by its *** decisions, 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when

the discharge violates a clearly mandated public policy." Therefore, we decline plaintiff's invitation to create a new cause of action for at-will employees for an employer's breach of the duty of good faith and fair dealing.

For the foregoing reasons, the order of the circuit court of Washington County striking portions of plaintiff's complaint is affirmed. The order of the circuit court granting summary judgment in favor of defendant is reversed, and the cause remanded for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings.

KASSERMAN and WELCH, JJ., concur.