BERNARD MOTSCH, Plaintiff-Appellee and Cross-Appellant, v. PINE ROOFING COMPANY, INC., *et al.,* Defendants-Appellants and Cross-Appellees (Tracy Motsch, Plaintiff).

First District (1st Division)   No. 87—1781

Opinion filed September 12, 1988.—Rehearing denied January 25, 1989.—Modified opinion filed February 6, 1989.

Nathaniel I. Grey, P.C., of Chicago (Richard H. Victor, of counsel), for appellants.

Walter M. Ketchum, Ltd., of Chicago (Nancy M. Rundin, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs Bernard A. Motsch (plaintiff) and Tracy Motsch (Tracy) filed a complaint against their former employers, Martin J. Pine and Pine Roofing Company, Inc. (defendants), alleging retaliatory discharge and retaliatory refusal to recall. Under count I of their com-

plaint, plaintiff and Tracy claimed that defendants discharged them in retaliation for plaintiff having filed a claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). Count II further charged that defendants refused to recall plaintiff and Tracy to active service for the same reason. During a jury trial, the court directed a verdict against Tracy at the close of his evidence. After deliberations, the jury returned a verdict in favor of defendants on count I, but awarded plaintiff $9,410.25 compensatory damages and $28,639 punitive damages on count II of the complaint.

Defendants appeal the jury's verdict on count II, requesting a judgment notwithstanding the verdict, a new trial, or, in the alternative, a remittitur of damages. To support their appeal, defendants raise the following errors: (1) the evidence does not establish the essential elements for the tort of retaliatory discharge based upon refusal to recall; (2) the trial court erred in striking defendants' affirmative defense; (3) the trial court erred in tendering faulty jury instructions relating to the elements of the tort; (4) defendant Pine cannot be held personally liable as a matter of law; (5) the trial court erred in tendering a faulty jury instruction relating to punitive damages; (6) the punitive damage award is excessive and unsupported by the evidence; and (7) the compensatory damage award is excessive and against the manifest weight of the evidence.

Plaintiff filed a cross-appeal as to the jury's verdict on count I, conditioned upon this court granting defendants' requested relief on count II. Plaintiff alleges that the trial court committed reversible error by refusing to admit plaintiff's opinion testimony as to what constitutes a termination of employment and by admitting the same testimony from plaintiff's witness on cross-examination. For the following reasons, we affirm the jury verdict on count II and therefore need not address issues raised by plaintiff's cross-appeal.

The record discloses that defendant Pine Roofing is a union roofing company which employs at-will journeymen roofers through defendant Martin Pine, its executive vice-president and sole shareholder. According to expert testimony, there is a seasonal slowdown in roofing work in Chicago from November until March, during which time roofers are terminated from their employment. Generally, such terminated employees are paid in full and informed that there is no more work available. Roofing companies often call back the same employees at the end of the seasonal slowdown that they employed before the slowdown.

For over 30 years, plaintiff was employed seasonally as a roofer for many contractors. Before commencing his employment with

defendants in August 1982, defendant had been employed by one contractor for seven years and in 1982 voluntarily terminated his employment with another employer which began in 1980. At the time of trial in 1987, plaintiff was working for an employer for two consecutive years.

On December 3, 1982, after picking up his paycheck, plaintiff fell down some stairs on defendants' premises and sustained injuries. As a result, plaintiff filed a workers' compensation claim on December 10, 1982. Plaintiff introduced the following testimony concerning the events that occurred thereafter. In March 1983, plaintiff's wife, Joan Motsch, telephoned defendant Pine to inquire into plaintiff's returning to work. In response to her inquiry, Pine stated: "No roofer that sues me is coming back." Although defendants hired roofers from April through June 1983, plaintiff never returned to work for defendant and did not obtain steady employment elsewhere until October 1983.

■ Under the general rule governing employment relationships, an at-will employee may be terminated at any time for any or no cause. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 128, 421 N.E.2d 876, 878; *Pleasure Driveway & Park District v. Jones* (1977), 51 Ill. App. 3d 182, 190, 367 N.E.2d 111, 117.) Illinois courts have recognized an exception to this general rule, however, for certain retaliatory discharges. In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, for example, our supreme court sanctioned a tort action against employers who discharge employees for exercising their statutory rights under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), in order to implement the Act's policies of protecting employees and promoting the State's general welfare. (*Kelsay,* 74 Ill. 2d at 181, 384 N.E.2d at 358.) The section of the Act on which the tort action is premised makes it unlawful for any employer "to discharge *** or to refuse to rehire or recall to active service" an employee for exercising his rights under the Act. Ill. Rev. Stat. 1985, ch. 48, par. 138.4(h).

■ Focusing on the language of this section, defendants initially challenge the jury's verdict on the ground that the elements of the tort are lacking. Illinois courts have construed section 8.4(h) to include the following elements: (1) plaintiff's status as an employee before injury; (2) plaintiff's exercise of a right granted by the Act; and (3) a discharge of plaintiff that is causally related to his filing a claim under the Act. *Slover v. Brown* (1986), 140 Ill. App. 3d 618, 620, 488 N.E.2d 1103, 1105.

■ Defendants contend that the testimony of three expert witnesses at trial demonstrates that plaintiff was not an employee before

the injury as a matter of law. The experts' testimony, however, only establishes that the roofing industry's general practice as to its seasonal employment terminations is to pay the employee in full and inform him that there is no more work available, a practice which Pine himself testified he followed on the day of plaintiff's injury. Plaintiff, although precluded from giving his opinion testimony as to what constitutes a termination in the roofing industry, testified to factual developments in his particular case from which the jury could have found that plaintiff's employment was not terminated. Plaintiff testified that defendant did not tell him his employment was terminated on the day of the injury, only that "work is slowing down so it ain't looking good now." Furthermore, plaintiff's testimony that he did not know he was discharged on the date of his injury is buttressed by his 30 years of employment experience in the roofing industry.

Based upon the above evidence, plaintiff's employment status before the injury was a factual matter to be determined by the jury. Viewing the evidence most favorably to plaintiff under the standard for granting a judgment notwithstanding the verdict (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504), the record does not establish that a jury could never find that plaintiff was an employee at the time of the injury. Nor are we able to say that the jury's verdict was against the manifest weight of the evidence so as to require a new trial. *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 476 N.E.2d 427.

Defendants' assertion that the jury verdict against plaintiff on the "discharge" count indicates that the jury found plaintiff was not an employee at the time of injury does not change this conclusion. The verdicts on the two counts are not necessarily inconsistent. The jury could have found that plaintiff's employment was terminated due to the seasonal slowdown sometime after the date of the injury and, therefore, the factual situation fell within the scope of the "refuse to rehire or recall" clause.

■ Defendants also argue that the element of causality is absent from plaintiff's retaliatory discharge claim. The causality element requires more than a discharge in connection with a filing of a claim. Causality will not exist where the basis for the discharge is valid and nonpretextual. (*Slover v. Brown* (1986), 140 Ill. App. 3d 618, 621, 488 N.E.2d 1103, 1105.) An employer who discharges or fails to rehire an employee because the employee filed a fraudulent claim under the Act, for example, would have a valid nonpretextual basis for the discharge that would negate the causality element.

■ The instant case does not present such a situation. While

defendants denied plaintiff's evidence, they did not present any evidence indicating a valid, nonpretextual reason for not rehiring plaintiff. Plaintiff, on the other hand, presented evidence that Pine stated, "No roofer that sues me is coming back." Further evidence introduced by plaintiff disclosed that at the close of the seasonal slowdown, defendants employed 10 roofers in April, up to 14 roofers in June, but did not recall plaintiff even though they had never complained about his work performance and had made him a foreman on one of their previous contracts

■ Defendants' related contention that the trial court improperly struck their affirmative defense that they had no duty to rehire plaintiff is without merit. The test to withstand a motion to strike an affirmative defense, as set forth in *Cunningham v. City of Sullivan* (1958), 15 Ill. App. 2d 561, 147 N.E.2d 200, requires that the defense give color to the opposing party's claim and then assert a new matter that would defeat the apparent right. Defendants' affirmative defense in this case would not defeat plaintiff's claim. The fact that defendant had no duty to rehire is irrelevant in retaliatory discharge or refusal to rehire or recall cases involving at-will employees since the material issue is not whether the employer has an obligation to retain a worker, but why the employer discharged the employee. The trial court, therefore, properly denied defendants' affirmative defense.

■ Defendants' final challenge to plaintiff's evidence relating to the elements of the tort is that the "refuse to rehire or recall" clause under the Act does not apply to industries that seasonally employ and terminate at-will employees. Defendants argue that in addition to the elements for retaliatory discharge set out above, a prerequisite to the "rehire or recall" clause is that plaintiff be an employee at the time of the failure to rehire or recall. "Refusal to rehire," defendants assert, does not refer to an employer's failure to hire an individual a second time after a previous discharge; rather, it refers to a "continuing employee" who is on disability leave or quits because he cannot work and who is then not permitted to return because he filed a claim. Plaintiff conversely argues that such language implies that the worker has been discharged previously and is not allowed to return. Plaintiff reasons that "rehire" means to hire anew; an employer cannot rehire one that is already an employee.

We hold that the "refuse to rehire or recall" clause applies to industries that seasonally terminate and rehire or recall employees. Not only does the wording of the Act support this interpretation, but the policies of the retaliatory discharge action would also be furthered by such an interpretation. The supreme court in *Kelsay v. Motorola, Inc.*

(1978), 74 Ill. 2d 172, 384 N.E.2d 353, in granting an additional civil remedy to uphold the policies of the Workers' Compensation Act, construed the purpose of the Act to prevent employees from having to choose between their jobs and seeking their rights under the Act. A requirement that a worker must be an employee at the time of "recall" would force employees in industries that seasonally hire and discharge employees to choose between their jobs and their statutory rights. Without the protection given by the *Kelsay* court, plaintiff would be forced to make this difficult choice.

■ Defendants also assert as error the trial court's giving of jury instructions on count II without including the requisites urged by defendants above, namely, the affirmative defense of no duty to hire and the requirements that plaintiff be an employee at the time he is injured, filed a workers' compensation claim, and is denied reemployment. As already indicated, the affirmative defense and the latter two alleged requisites are not necessary for a retaliatory discharge action based upon the refusal to rehire or recall clause. In addition, defendants have waived objection on appeal to any other improper instruction relating to the elements of count II by failing to object at trial or tender to the court a proper instruction. *Mackey v. Daddio* (1985), 139 Ill. App. 3d 604, 487 N.E.2d 1167; *Fink v. Woodard* (1984), 122 Ill. App. 3d 911, 462 N.E.2d 13.

■ Defendants next contend that defendant Pine cannot be held personally liable for the tortious acts of the corporation. While it is clear as a general rule of corporate law that an officer or director of a corporation is insulated from the corporation's liabilities, it is also well recognized under agency law that an officer-agent of a corporate principal is liable for his own tortious acts. Illinois courts have extended this basic precept in holding corporate officers liable for torts of the corporation in which the officers have personally participated. (*National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 418 N.E.2d 1114 (corporate officer liable for corporation's conversion); *McDonald v. Frontier Lanes, Inc.* (1971), 1 Ill. App. 3d 345, 272 N.E.2d 369 (corporate officer liable for corporation's negligence); *Miller v. Simon* (1968), 100 Ill. App. 2d 6, 241 N.E.2d 697 (corporate officer liable for trespass to realty).) The tortious acts at issue in the above cases, however, are distinguishable from the instant case. The acts committed in these cases would be tortious as to any person who engaged in conduct of that type. The instant tort of retaliatory discharge arising from a violation of the Workers' Compensation Act, on the other hand, may be committed only by persons serving in the specific capacity of an "employer." (Ill. Rev. Stat. 1985,

ch. 48, par. 138.4(h).) The record here clearly indicates that defendant Pine Roofing Company was plaintiff's employer and defendant Martin Pine acted solely in the capacity of officer of the corporation. Even though defendant Martin Pine personally participated in the tort, only defendant Pine Roofing, as plaintiff's employer, may be held personally liable for the tort. Nevertheless, defendants, by not raising this issue in their post-trial motion, have waived any objection on appeal to defendant Martin Pine's personal liability. 73 Ill. 2d R. 366(b)(2)(iii); *Zvonarits v. Vollen* (1978), 64 Ill. App. 3d 958, 382 N.E.2d 18.

Defendants raise a number of objections to the compensatory and punitive damages awarded by the jury in this case. As to the punitive damage award, defendants initially claim that the trial court erred in giving to the jury an instruction on that subject without including wilful and wanton language. Defendants, though, have waived any objection to the instruction by not objecting at trial or tendering to the trial court an instruction that defendants deemed appropriate. *Mackey v. Daddio* (1985), 139 Ill. App. 3d 604, 487 N.E.2d 1167.

■■■ Notwithstanding defendants' waiver, the trial court did not err in submitting the instruction to the jury. The question of whether a particular case justifies the imposition of punitive damages is one of law for the trial court, while the measurement of punitive damages is a jury question. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87, 174 N.E.2d 157, 165.) Furthermore, where a plaintiff's factual allegations are sufficient to state a legally cognizable claim for punitive damages, the trial court has discretion to submit the issue to the jury, and the court's determination will not be disturbed absent an abuse of that discretion. (*Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 580, 491 N.E.2d 464, 483; *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 937, 419 N.E.2d 578, 596.) Here, plaintiff introduced evidence, and the jury necessarily found, that defendants acted wilfully in failing to rehire plaintiff. The trial court, therefore, did not abuse its discretion in finding a legally cognizable claim for punitive damages and submitting the matter to the jury.

■■■ Defendants next allege that the punitive damage award is excessive, contrary to law, and unsupported by the evidence. Punitive damages are appropriately awarded for torts committed with fraud, actual malice, deliberate violence, or when a defendant acts wilfully or wantonly. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353; *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464.) The Illinois Supreme Court has recognized that retaliatory discharge based upon filing a workers' compensation claim is an appropriate

tort for a punitive damage award because it deters an employer from discharging an employee exercising his statutory rights. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359.) In reviewing the appropriateness of the amount of punitive damages awarded in this case, we are guided by the principle that courts will not alter the award unless it is clearly excessive. (*Tomlinson v. Chapman* (1960), 24 Ill. App. 2d 192, 164 N.E.2d 240; *Smith v. Seiber* (1984), 127 Ill. App. 3d 950, 469 N.E.2d 231.) We are further assisted in our evaluation of the award by three factors the court in *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 712, 450 N.E.2d 1199, 1207, set out for a reviewing court to consider in making its determination: (1) the nature and enormity of the wrong; (2) the potential liability of defendants for multiple claims by numerous persons affected by the wrongful conduct; and (3) the financial status of the defendants.

■■■ The first two *Hazelwood* factors clearly suggest the award of $28,639 is not excessive in this case. The seriousness of the wrong is reflected in the legislature's enactment of section 8.4(h) of the Workers' Compensation Act, and the supreme court's approval of a civil tort action based upon a violation of the Act. The potential for multiple liability from other claims is nonexistent in this case, as long as defendants do not retaliate in the future.

As to defendants' financial status, the third *Hazelwood* factor, defendants contend that the financial statements submitted to the jury without expert testimony were insufficient for the jury to determine defendants' financial position. In effect, defendants claim that plaintiff had a duty to present evidence as to defendants' financial condition. Plaintiff correctly points out that *Hazelwood* gives direction to a court on review, not a jury. Plaintiff has no duty to present evidence as to defendants' financial status to recover punitive damages. (*Wilson v. Colston* (1983), 120 Ill. App. 3d 150, 153, 457 N.E.2d 1042, 1044.) Furthermore, defendants could have presented evidence in rebuttal to explain their financial position. *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 581, 491 N.E.2d 464, 484.

Defendants also claim that the $28,639 award is excessive because it represents 37% of Pine Roofing's net worth based upon Pine Roofing's 1983 financial statements. Defendants have not submitted to this court sufficient information on defendants' current financial status to make the determination. Accordingly, considering the three factors outlined in *Hazelwood,* the punitive damages awarded by the jury are not excessive.

■■■ Turning to the compensatory damage award, defendants re-

quest a remittitur of the $9,410.25 award because it is excessive and against the manifest weight of the evidence. Plaintiff and defendants disagree over the correct formula for determining lost wages, the basis of the compensatory award in this case. Defendants cite *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, for measuring lost wages between the time plaintiff was wrongfully discharged and the time plaintiff found a new job. Plaintiff relies on *Hollis v. R. Latoria Construction, Inc.* (1983), 122 Ill. App. 3d 290, 296, 461 N.E.2d 439, 443, for his assertion that the correct measure of his lost wages is determined by deducting the number of hours plaintiff worked in 1983 from the average number of hours plaintiff worked in a five-year period, and multiplying the result by $16.50, the hourly pay scale for a journeyman roofer in 1983.

We need not decide the appropriate measure of damages to be applied in the factual situation presented here since we find that even under the formulation espoused by defendants, the award is not excessive. Plaintiff's testimony indicated that after March 1983, plaintiff did not have steady employment until October 1983. *Kelsay* calculated damages between the time the plaintiff was discharged and the time the plaintiff found a permanent job. *Kelsay* does not dictate, as defendants suggest, that the period for calculating damages ends when plaintiff worked on a job that lasted only six or seven days in June. Even assuming defendants are correct in their assertion that they are not responsible for damages in March 1983 because of the unavailability of work, based upon an hourly rate of $16.50 at 40 hours per week over the remaining six months until plaintiff obtained permanent employment, the computation would be well above the jury's award of $9,410.24. Thus, the jury's compensatory award is neither excessive nor against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.