PHILLIP MILLER, Plaintiff-Appellant and Cross-Appellee, v. J.M. JONES COMPANY, Defendant-Appellee and Cross-Appellant.

Fourth District   No. 4—91—0296

Opinion filed February 20, 1992.

Robert I. Auler, of Auler Law Offices, P.C., of Urbana, for appellant.

Marc J. Ansel, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff Phillip Miller appeals, in this retaliatory discharge case, from the trial court's entry of a directed verdict at the close of plaintiff's evidence. We affirm.

Plaintiff was employed as a truck driver by J.M. Jones Company. He injured his back while working in 1984, but was able to return to his job. In 1985 he again injured his back and for a period of time was limited to light duty while under the care of his doctor. After another injury in early 1986, plaintiff was placed in a modified work-duty program as a "computer extractor." That position required plaintiff to climb into trucks carrying a 30- to 35-pound port-a-pack, to take information from a truck computer which recorded travel information, and to check the driver's travel reports against the computer information. While so assigned in January 1987 plaintiff reinjured his back climbing out of a truck. Also in January 1987 Jonny Bennett began working for defendant as its loss-prevention safety manager. Bennett testified his primary function was to reduce employee injuries, but acknowledged he had reduced workers' compensation expenses. Bennett changed the modified-duty program, calling it "temporary alternative duty," and prepared written guidelines for review of the status of an injured employee. Company doctors were changed shortly after Bennett's arrival.

Plaintiff had had a workers' compensation claim pending since 1986. In a letter dated November 29, 1986, plaintiff's compensation attorney took the position that plaintiff was permanently disabled from truck driving. In an evidence deposition taken in March 1987, plaintiff's treating physician, Dr. Sam Young, testified that plaintiff was permanently disabled from performing the duties of a truck driver. Dr. Young released plaintiff for light-duty work, but plaintiff did not return to work, apparently because the parties were negoti-

ating the compensation claim. During negotiations the parties' attorneys discussed vocational rehabilitation and the possibility that plaintiff would resign. In his March 23, 1987, letter to Bennett enclosing Dr. Young's light-duty slip, plaintiff stated, "[s]hould however the negotiation process fail, it appears that J. M. Jones will have to provide a permanent light duty job."

On May 11, 1987, a settlement contract resolving all issues, including rehabilitation, was signed by the parties and approved by the arbitrator. The contract was set out on a form prepared by the Industrial Commission. Where the form asked for information on the injured employee and his current employment, the following answer was filled in: "Employee given modified duty within his restrictions. Will seek new work with a different employer." Plaintiff refused to sign the contract with the quoted language included, and the language was accordingly marked out.

Plaintiff testified he contacted Jonny Bennett about mid-June and asked to take vacation time, but Bennett asked him if he would be resigning. Bennett testified plaintiff asked to collect his accrued vacation benefits, and Bennett told him that according to company policy he could not collect accrued benefits until he completed his resignation papers. On June 18, 1987, defendant's personnel manager, Ken Waltsgott, sent plaintiff a letter of termination referring to "medical restrictions *** provided by Dr. Young that make it impossible for you to be employed as a truck driver at the J. M. Jones Company." Waltsgott testified plaintiff had told him that plaintiff could never see returning to the truck driver position, that Waltsgott knew plaintiff was not interested in clerical positions, and was not happy with the computer extractor position. Waltsgott thought plaintiff would have liked a dispatcher position, but none was available. Waltsgott testified plaintiff's filing of his workers' compensation claim was not a factor in his decision to discharge plaintiff.

Plaintiff was on vacation and did not receive the termination letter until July 10. In plaintiff's response to the termination letter, he said that he had made an appointment with the company doctor, Dr. Brunner, to see if the doctor would release him "back to driving," and that Dr. Brunner's determination would be the deciding factor in whether he returned. Shortly thereafter Waltsgott received a return-to-work slip signed by Dr. Brunner which indicated plaintiff was released to return to truck driving. Plaintiff had not told Dr. Brunner he had been terminated; he told the doctor he would be terminated if he did not get a release for work, that he

felt he could go back to work, and wanted to go back to work. About this time plaintiff saw defendant's classified ad describing a part-time clerical position. Plaintiff testified he would have been interested in that type of job, but he did not contact defendant about it.

Defendant had four other employees who were injured while in a truck driving position. Each had filed a workers' compensation claim and was eventually released by his doctor with permanent restrictions which precluded a return to truck driving, and each had eventually been placed in a permanent position which met his abilities and medical restrictions.

Plaintiff filed a retaliatory discharge complaint alleging he had been terminated because of his exercise of rights under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 et seq.). After the close of plaintiff's evidence the trial court granted defendant's motion for a directed verdict, finding no evidence from which the jury could conclude that the reason given by Waltsgott for discharge was merely a pretext, and no evidence that the true motive for discharge was retaliation for plaintiff's exercise of his rights or receipt of benefits under the Act. During the trial plaintiff had made an offer of proof that while he was working as a computer extractor the company's safety director, Les Reinert, told him the company "was trying to break him" by giving him that position, which required him to "inform upon" his fellow drivers and their inaccurate mileage claims. The trial court ruled the evidence admissible, but plaintiff chose not to introduce it. After the directed verdict plaintiff's motion to reopen and submit this evidence was granted, but the court nevertheless granted the directed verdict. Plaintiff appeals, arguing that he established a *prima facie* case under *Hugo v. Tomaszewski* (1987), 155 Ill. App. 3d 906, 508 N.E.2d 1139, and that the jury could reasonably have inferred from the evidence that he was terminated in retaliation for his exercise of rights under the Act.

The Act provides:

"It shall be unlawful for any employer *** to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

It shall be unlawful for any employer *** to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." (Ill. Rev. Stat. 1989, ch. 48, par. 138.4(h).)

To establish a claim of retaliatory discharge, a plaintiff must establish: (1) he was an employee before the injury; (2) he exercised a right granted by the Act; and (3) he was discharged and the discharge was causally related to his exercise of rights. (*Gonzalez v. Prestress Engineering Corp.* (1990), 194 Ill. App. 3d 819, 823, 551 N.E.2d 793, 796.) The causality element will not be satisfied where the basis of the discharge is valid and nonpretextual. *Gonzalez*, 194 Ill. App. 3d at 824, 551 N.E.2d at 797.

■ The trial court properly ruled the testimony of the safety director, Reinert, was admissible. An agent may make an admission regarding a matter within the scope of his authority, while the employment relationship exists. (*Oakleaf v. Oakleaf & Associates, Inc.* (1988), 173 Ill. App. 3d 637, 651-52, 527 N.E.2d 926, 935; *Cornell v. Langland* (1982), 109 Ill. App. 3d 472, 476, 440 N.E.2d 985, 988.) Agents are rarely given specific authority to make damaging statements, but the present trend is to admit the statement if it concerns matters within the scope of the agent's employment. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.9, at 609 (5th ed. 1990).) Knowledge why an employee was assigned a certain position could be a matter within the scope of a safety director's employment.

■ The cases which plaintiff cites for the proposition that he established a *prima facie* case by showing a short time period between his exercise of rights and his discharge, *Hugo* (155 Ill. App. 3d 906, 508 N.E.2d 1139) and *Bragado v. Cherry Electrical Products Corp.* (1989), 191 Ill. App. 3d 136, 547 N.E.2d 643, utilize the three-tier standard of proof of the Civil Rights Act cases. (See *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817; see also *Burnham City Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 1002, 467 N.E.2d 635, 637.) Under the three-tier standard of proof plaintiff need only make out a minimal *prima facie* case, which defendant must then rebut by adducing some evidence of lawful motivation for the challenged action. If defendant does so, plaintiff must satisfy the ultimate burden of proof by showing that defendant's reason for the challenged action is pretextual. (*Netzel v. United Parcel Service,*

*Inc.* (1989), 181 Ill. App. 3d 808, 812, 537 N.E.2d 1348, 1350 (declining to apply the three-tier standard to retaliatory discharge cases).) We need not decide whether the three-tier standard should be applied here, or whether plaintiff showed a short time period between the exercise of his rights and his discharge. As defendant articulated a lawful reason for discharge (during plaintiff's presentation of his *prima facie* case), it was plaintiff's obligation to prove the reason for discharge was pretextual. See *Horton v. Miller Chemical Co.* (7th Cir. 1985), 776 F.2d 1351, 1359 n.11.

■ Plaintiff argues that courts should be especially reluctant to take retaliatory discharge cases from the jury because direct evidence of an employer's motivation is so difficult to obtain and circumstantial evidence must be evaluated by the trier of fact. Many retaliatory discharge cases have been decided as a matter of law, however, at various stages of the proceeding. Articulation of a lawful reason for discharge is not enough to grant a motion to dismiss; at that stage, the allegations of the complaint and all reasonable inferences therefrom must be regarded as true. (*Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911; *Richardson v. Illinois Bell Telephone Co.* (1987), 156 Ill. App. 3d 1006, 510 N.E.2d 134; *Bragado*, 191 Ill. App. 3d 136, 547 N.E.2d 643 (evidence that injured employee was unable to do the work could not be considered on motion to dismiss).) Similarly, the issue of an employer's motive or intent is a question of material fact, not normally subject to summary judgment. (*Palmateer v. International Harvester Co.* (1986), 140 Ill. App. 3d 857, 860, 489 N.E.2d 474, 476; *Hugo*, 155 Ill. App. 3d at 909, 508 N.E.2d at 1141.) Summary judgment for the employer was granted, however, in a case where the employee's on-the-job injury made it impractical and unsafe to continue in her present position, despite the employee's argument that the employer had a duty to transfer her to another position. (*LaPorte v. Jostens, Inc.* (1991), 213 Ill. App. 3d 1089, 1093, 572 N.E.2d 1209, 1211-12.) In *Austin v. St. Joseph Hospital* (1989), 187 Ill. App. 3d 891, 897, 543 N.E.2d 932, 935, summary judgment for the employer was affirmed despite testimony the employee was told that if she left St. Joseph Hospital (the employer) as a patient, she would lose her "workers' [compensation]." Despite that statement, the only inference which could reasonably be drawn from the record was that plaintiff was discharged after failing to return to work after it was determined that she was fit to do so.

■ The court granted the employer a new trial in *Thompson v. Abbott Laboratories* (1990), 193 Ill. App. 3d 188, 195, 549 N.E.2d 1295, 1299, despite plaintiff's testimony that a supervisor told her to accept the compensation settlement offer or she would find herself " 'out on 14th Street.' " Evidence which is stronger than that needed to grant a new trial, evidence which is more nearly conclusive, will permit a court to direct a verdict or enter a judgment *n.o.v.* (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36.) Verdicts may be directed or judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 507, 229 N.E.2d 504, 512.) In determining whether the evidence is overwhelming, all the evidence in a case, not just the evidence which opposes the movant, may be considered. (*Pedrick*, 37 Ill. 2d at 502, 229 N.E.2d at 509.) The presence of some evidence to the contrary will not prevent the entry of a directed verdict. *Pedrick*, 37 Ill. 2d at 504-05, 229 N.E.2d at 510; *McMillen v. Carlinville Area Hospital* (1983), 114 Ill. App. 3d 732, 738, 450 N.E.2d 5, 10.

The directed verdict cases draw a fine line. In some cases a directed verdict is refused, often because of statements made by or on behalf of an employer. In *Motsch v. Pine Roofing Co.* (1988), 178 Ill. App. 3d 169, 173, 533 N.E.2d 1, 3, for example, the employer told the employee's wife: " 'No roofer that sues me is coming back [to work].' " There the employer did not present any evidence indicating a valid nonpretextual reason for not recalling plaintiff. (*Motsch*, 178 Ill. App. 3d at 174-75, 533 N.E.2d at 5.) In *Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 562 N.E.2d 282, the court refused to enter a judgment *n.o.v.* for the employer, despite a good deal of evidence the employee was fired for failing to return to work, because of ambiguities present in a statement made by the company nurse, and a complaint made by a supervisor when the employee's doctor gave the employee light work. The *Marin* court, however, did grant the employer a new trial. In *Darnell v. Impact Industries, Inc.* (1983), 119 Ill. App. 3d 763, 457 N.E.2d 125, *aff'd* (1984), 105 Ill. 2d 158, 473 N.E.2d 935, the employee lied on an application form, saying that she had never filed a compensation claim. The question whether she was fired for lying or whether she was fired for filing compensation claims was held to be one for the jury, and the trial court's directed verdict at the close of plaintiff's case was reversed.

In other cases the evidence supporting the employer's reason for discharge was viewed as overwhelming, and therefore warranting a directed verdict, despite some conflicts in the evidence, and despite some unpleasant employer statements which could be taken different ways. In *Horton*, the manager told the injured employee he was "a bad risk" and would have to be terminated. That language was ambiguous, but the Seventh Circuit, applying Illinois law, held that a directed verdict should have been entered in the light of the other, overwhelming, evidence: plaintiff's doctor had recommended he do "no more lifting," no one ever said anything to plaintiff about his filing a workers' compensation claim, plaintiff pursued his rights under the Act without opposition and received all the benefits to which he was entitled, and plaintiff was unable to identify any right the employer interfered with. (*Horton*, 776 F.2d at 1352.) In contrast, in *Netzel* (181 Ill. App. 3d at 813, 537 N.E.2d at 1351), the court held complaints that plaintiff was malingering could reasonably be interpreted as revealing the manager's displeasure with plaintiff's prolonged exercise of his statutory rights, rather than an actual belief that plaintiff was feigning injury. *Netzel* reversed the trial court's order insofar as it granted the employer a new trial on liability, but affirmed the grant of new trial on damages. In *Lewis v. Zachary Confections Co.* (1987), 153 Ill. App. 3d 311, 505 N.E.2d 1087, judgment *n.o.v.* was entered for the employer despite the employee's testimony that her manager told her she was fired for filing a workers' compensation claim, testimony somewhat supported by the company treasurer. The evidence was clear, however, that the employee was only a temporary employee. See also *Bryce v. Johnson & Johnson* (1983), 115 Ill. App. 3d 913, 450 N.E.2d 1235 (unpleasant words, but plaintiff was never discharged; totally disabled in a later accident).

There is some ambiguity, in this case, in the fact that a supervisor may have told plaintiff the company was trying to break him by assigning him to the computer extractor position, and in the fact that the language about plaintiff seeking work with a different employer was at first included in the workers' compensation settlement, then stricken. Plaintiff has not been able to suggest, however, how either of those events shows an intent on the part of defendant to interfere with plaintiff's rights under the Act. Suspicions may be aroused by the fact that the company brought in a new loss-prevention safety manager, but mere suspicions do not carry much probative weight. Although a jury decides questions of credibility, a jury will not be allowed to rest a decision for plaintiff

entirely on its disbelief of the denials made by defendant's witnesses.

■ As in *Horton*, the probative value of plaintiff's scant evidence is greatly diminished when viewed in light of the other evidence presented at the trial. Although plaintiff suggests Dr. Young's testimony is ambiguous, a fair reading of that testimony, quoted verbatim in the trial court's ruling, clearly indicates that in the doctor's opinion plaintiff will be medically unable to work as a truck driver in the future. (See *Horton*, 776 F.2d at 1357 (argument that physician's report was ambiguous on whether plaintiff was to *forever* refrain from lifting).) The doctor's testimony is reinforced by the position taken by plaintiff during the compensation claim proceedings, that he was permanently unable to return to work as a truck driver. Defendant's assumption that plaintiff would seek other employment was not based upon any unlawful motive, but upon plaintiff's own representations. Defendant did not have the obligation to provide permanent light-duty work for plaintiff. Medical inability to work is a legitimate nondiscriminatory reason for discharge of an employee, even where that medical inability results from an accident at work. (*LaPorte*, 213 Ill. App. 3d at 1093, 572 N.E.2d at 1212; see *Horton*, 776 F.2d 1351.) The facts in this case are not complicated or greatly disputed. As in *Horton*, plaintiff here filed his claim and received his benefits without any interference from defendant, and had done so in the past. The fact that defendant did not retaliate against other employees who had filed workers' compensations claims should also be given weight. *Marin*, 204 Ill. App. 3d at 308, 562 N.E.2d at 286; *Netzel*, 181 Ill. App. 3d at 813, 537 N.E.2d at 1351.

Dr. Brunner did indicate, after plaintiff was terminated, that plaintiff was able to return to work as a truck driver. Plaintiff points out that he was not offered alternate, permanent employment with defendant, like other employees who were permanently restricted from their regular jobs, nor was he offered a clerical position defendant was advertising. The critical issue is the employer's intent at the time of the discharge, but events occurring after the discharge may be relevant to show that intent. (See *Hocking v. Hocking* (1979), 76 Ill. App. 3d 29, 34-35, 394 N.E.2d 653, 657-58 (a resulting trust case).) Again, only slight weight can be given any of this evidence which resulted from plaintiff's self-serving efforts after his termination. Dr. Brunner testified that what plaintiff told him was as important as his examination of plaintiff, and plaintiff told him he felt fine and wanted to return to work. At the time the

decision to terminate was made, by contrast, there was no indication that plaintiff could ever return to his position as a truck driver. Defendant was justified in ignoring Dr. Brunner's back-to-work slip. Even if plaintiff was in fact able to return to work as a truck driver, the issue in these cases is not whether the employer treated the employee fairly, but whether the discharge was in retaliation for filing a workers' compensation claim. *Marin*, 204 Ill. App. 3d at 311, 562 N.E.2d at 288; *Thomas v. Zamberletti* (1985), 134 Ill. App. 3d 387, 480 N.E.2d 869.

The evidence here, viewed in its aspect most favorable to the plaintiff, so overwhelmingly favored defendant that no contrary verdict based on that evidence could ever stand. The trial court properly directed a verdict in favor of defendant. On cross-appeal defendant argues the trial court erred in denying its motion to question the venire and to preinstruct the jury. Because we affirm the directed verdict, we need not address this issue.

Affirmed.

GREEN, P.J., and LUND, J., concur.