MARTIN ABRAMS, Plaintiff-Appellant, v. ECHLIN CORPORATION *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 87—3417

Opinion filed August 30, 1988.

Ronald H. Balson, of Chicago, for appellant.

Michael Weininger and Lawrence M. Karlin, both of Katz, Randall & Weinberg, of Chicago, for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff brought this action charging his former employer and its president with retaliatory discharge. The trial court granted the defendants' motion to dismiss the action pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619). Plaintiff appeals, charging that the trial court erred in dismissing his suit.

Plaintiff's employment as a salesman by EPE, Inc. (EPE), began in 1983 and ended on February 21, 1985. During the calendar year 1984 he worked pursuant to a written agreement that provided for the payment of wages which included commissions earned on sales exceeding 80% of his "quota"; one half the commissions were payable quarterly and the remainder annually. The contract also included a clause that commissions paid on merchandise returned by a customer were to be "charged back" against the salesman's account. There is no dispute as to the "at will" status of plaintiff's employment.

In early 1985, plaintiff and EPE had a dispute as to whether commissions on merchandise sold in 1984 and returned by the customer in January 1985 would be charged back against the 1984 or 1985 commissions. Plaintiff maintained that he was owed commissions totaling $4,250. After some discussion between plaintiff and the national sales manager for EPE, $2,250 of the amount claimed due was paid, which left a disputed balance of $2,000.

On February 15, 1985, plaintiff sent a letter to Bjarne Qvale (Qvale), the president of EPE, explaining the problem and complaining that he had not been paid the amount owed to him. Six days later, while plaintiff was at a customer's place of business in Chicago, Qvale had a telephone conversation with plaintiff, in which he told him, "I have just read your letter. No one tells me how to run my business.

You are terminated, and you are to leave the customer's place of business immediately."

Abrams filed a complaint grounded in retaliatory discharge in violation of the Illinois Wage Payment and Collection Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 39m—14) against EPE, Qvale and the Echlin Corporation (Echlin), which had acquired EPE Inc., since plaintiff's discharge. Echlin filed a motion to dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), but this motion was not ruled on since Echlin was later dismissed from the case by an agreed order. Subsequently, EPE filed a motion to dismiss the action pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)), charging, *inter alia*, that plaintiff's complaint contained a conclusion rather than a well-pleaded fact regarding his discharge, that neither the specific reason for plaintiff's discharge nor plaintiff's letter regarding the commission dispute indicate any reliance on or reference to the Illinois Wage Payment and Collection Act or any relationship between the Act and plaintiff's discharge, and that no public policy dispute was involved between the parties but rather one arising out of a purely private matter—their written agreement. The court granted the motion after hearing argument thereon. Upon denial of plaintiff's motion to reconsider, in which plaintiff stated that the court had misapprehended the meaning of the statute, a timely appeal was filed.

OPINION

Although defendants properly filed a motion to dismiss under section 2—619 of our Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619), the case was presented to both the trial court and to this court very largely on the ground that plaintiff failed to state a cause of action; our discussion here will accordingly treat substantially with that issue.

■ In order to state a cause of action for retaliatory discharge

"[a]ll that is required is that the employer discharge the employee in retaliation for the employee's activities, and that the discharge be in contravention of a clearly mandated public policy." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134, 421 N.E.2d 876.)

(See also *Brazinski v. Transport Service Co.* (1987), 159 Ill. App. 3d 1061, 1068, 513 N.E.2d 76; and generally Yonover, *Retaliatory Discharge in Illinois: Recent Developments*, 61 Chi. Kent L. Rev. 671 (1985).) Thus, in order to survive a motion to dismiss, plaintiff must

plead facts that establish retaliation in the firing of an at-will employee in contravention of a public policy.

Plaintiff's complaint asserts that his employment was terminated because he stated to Qvale that he would take legal action to enforce his rights under the Illinois Wage Payment and Collection Act (Ill. Rev. Stat. 1985, ch. 48, par. 39m—1 *et seq.*) and under the terms of the agreement he had with EPE. Plaintiff acknowledges that he did not specifically mention the Act in his letter, but defendants concede that such specific reference is not necessary to state a cause of action.

Defendants contend that plaintiff's statement regarding the reason for his discharge was a conclusion not supported by any allegations of specific facts, and they point to the trial memorandum of plaintiff in which he states, "Of course the statement is conclusory in nature at this point. But Mr. Abrams intends to prove the fact at trial." Plaintiff argues that the conclusion "is no less than a reasonable inference supported by the other specific factual allegations of the complaint."

This court set forth the standard to be applied in considering a motion to dismiss for failure to state a cause of action in *Skinner v. Mahomet Seymour School District* (1980), 90 Ill. App. 3d 655, 413 N.E.2d 507, as follows:

> "There are certain general rules of construction to be applied when a complaint is challenged for failure to state a cause of action. The essential test of the sufficiency of the complaint is whether it reasonably informs the defendant of a valid claim under a general class of cases of which the court has jurisdiction. [Citation.] In determining the sufficiency of the complaint, the court must accept as true all well pleaded facts and reasonable inferences drawn therefrom. [Citation.] No pleading is bad in substance where it reasonably informs the opposite party of the nature of the claim. [Citation.] Finally, a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under pleadings which would entitle plaintiff to relief." 90 Ill. App. 3d at 656-57.

A fair reading of the complaint in the instant case reasonably informs the defendant that plaintiff claims he was discharged in retaliation for complaining to his employer that he had not been paid for his services and for stating that he would take legal action to enforce such payment. Accordingly, we hold that plaintiff's complaint supplies the first element of the retaliatory discharge test in that he pleads a set of facts that could establish retaliation in his firing.

The second element of a retaliatory discharge claim requires plaintiff to plead the "contravention of a clearly mandated public policy" by his employer. While our courts have not defined "public policy" with any degree of exactness, adequate guidelines can be found in the cases treating with this relatively new tort.

Retaliatory discharge was first recognized as a tort by the supreme court in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353. In that case, plaintiff, an at-will employee, was discharged because she had filed a workers' compensation claim. The court stated:

> "It [the Workers' Compensation Act] provides for efficient remedies for and protection of employees and, as such, promotes the general welfare of this State. *** We are convinced that to uphold and implement this public policy a cause of action should exist for retaliatory discharge.
> ***
> We are not convinced that an employer's otherwise absolute power to terminate an employee at will should prevail when that power is exercised to prevent the employee from asserting his statutory rights under the Workmen's Compensation Act." 74 Ill. 2d at 181.

In *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 127, 421 N.E.2d 876, the supreme court granted plaintiff leave to appeal "to determine the contours of the tort of retaliatory discharge." In that case Palmateer was discharged for supplying information to local law enforcement authorities that an employee of the company might be involved in criminal activity and for agreeing to assist in the investigation and trial of the employee. The court stated:

> "When a discharge contravenes public policy in any way the employer has committed a legal wrong. However, the employer retains the right to fire workers at will in cases 'where no clear mandate of public policy is involved' [citation]. ***
> There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." (85 Ill. 2d at 130.)

To be actionable a retaliatory discharge must not be of a purely personal nature but must "strike at the heart of a citizen's social rights, duties, and responsibilities." 85 Ill. 2d at 130.

Plaintiff cites several Illinois cases to illustrate the court's application of this formula to various fact situations. In the first case he

cites, *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588, the employee, an accountant, was discharged for reporting his suspicions of embezzlement of corporate funds by "officers and/or employees" to the company's president and chief operating officer. The *Petrik* court, comparing the facts to those in *Palmateer*, found that:

"[The complaint] involves something more than an ordinary internal dispute between an employee and his employer. It is equally apparent that the public policy considerations that underlie *Palmateer* also support Petrik's conduct." (111 Ill. App. 3d at 508.)

And the public policy considerations referred to by this court in *Petrik* were described earlier by the supreme court in *Palmateer* as follows:

"There is no public policy more basic, nothing more implicit in the concept of ordered liberty [citation], than the enforcement of a State's criminal code. ***

*** [P]ublic policy nevertheless favors citizen crime-fighters." *Palmateer*, 85 Ill. 2d at 132.

Plaintiff next cites *Johnson v. World Color Press, Inc.* (1986), 147 Ill. App. 3d 746, 498 N.E.2d 575, in which the plaintiff was discharged in retaliation for his opposition to certain accounting practices of the employer which he claimed constituted violations of Federal securities laws. In dealing with the question of public policy the court stated:

"In summary, we find that public policy favors full disclosure, truthfulness and accuracy in the financial report made by businesses to the government and to the public, and that an employee who voices objection to practices which he reasonably believes violate this policy should be protected from being discharged as a result of such objection." 147 Ill. App. 3d at 750.

*Petrik* and *Johnson* are clearly distinguishable from the case at bar because they involved possible illegal activity on the part of the employer, and the employees charged that they were fired for attempting to report this activity to the proper authority. This is not the case here.

Plaintiff cites the Illinois Wage and Payment Collection Act, which provides:

"Any employer, or any agent of an employer, who knowingly discharges or in any other manner knowingly discriminates against any employee because that employee has made a complaint to his employer, or to the Director of Labor or his autho-

rized representative, that he or she has not been paid *in accordance with the provisions of this Act,* or because that employee has caused to be instituted any proceeding under or related to this Act, or because that employee has testified or is about to testify in any investigation or proceeding under this Act, is guilty, upon conviction, of a Class C misdemeanor." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 48, par. 39m—14(c).

Plaintiff argues that the Act embodies a clearly mandated public policy in favor of employees who seek to recover wages due to them, and that his discharge violated that policy. However, plaintiff does not identify in his complaint or in his brief the "provisions of this Act" which were violated when his employer indicated it would set off commissions paid on returned merchandise. The agreement of the parties to this proceeding clearly provides for such a set off procedure. The disagreement of the parties existed only as to whether the setoff should take place in 1984 or 1985.

As the court said in *Palmateer*:

"In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively \*\*\*. \*\*\* [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." (*Palmateer*, 85 Ill. 2d at 130.)

The instant case clearly does not appear to be such a matter but, rather, a purely personal and private dispute.

Defendants cite *Kavanagh v. KLM Royal Dutch Airlines* (N.D. Ill. 1983), 566 F. Supp. 242, in which plaintiff was involved in a wage dispute with his employer, who claimed that he had been overpaid $21,000 in salary. Plaintiff hired an attorney and was fired about a week after his attorney sent a letter to the company advising it of plaintiff's resolve to file suit if an attempt was made to reduce his salary. According to plaintiff's complaint the public policy violated was one assuring citizens of the right to retain counsel and have access to the courts. The court reasoned:

"Even if the court limited plaintiff's theory to the employment context, it would metamorphose the supposedly narrow exception recognized in *Kelsay* and *Palmateer* into the monster that swallowed the employment-at-will rule. Whenever a dispute between an employer and an at-will employee threatens to culminate in the employee's discharge, the employee, simply by retaining an attorney and threatening to sue, could procure that which is unavailable to him through contract—employment security." 566 F. Supp. at 244.

The *Kavanagh* court also discussed the Illinois Wage Payment and Collection Act, the same statute invoked by plaintiff in the instant case. The court stated:

"In essence, he [plaintiff] asks the court to find that an at-will employee cannot be discharged because of any dispute with his employer concerning the payment of wages when he has retained an attorney. Such a result, the court concludes, is not clearly mandated by any public policy favoring the exercise of rights under the Wage Payment and Collection Act." 566 F. Supp. at 245.

The facts in *Kavanagh* are analogous to those in the instant case, for while plaintiff here did not engage an attorney, he did threaten to take "necessary legal action to secure payment." Thus, it would appear that the court's reasoning in *Kavanagh* would apply here.

Plaintiff in the case *sub judice* analogizes his situation to that of the plaintiff in *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 519 N.E.2d 909, in which the employee requested that her employer furnish medical attention for a back injury received in the course of her employment. As a result her employer directed her to sign a resignation form. The complaint in *Hinthorn* did not state that plaintiff had filed a claim for workers' compensation benefits or that she had threatened to do so. However, the court noted that by the facts alleged, plaintiff had the right under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) to receive medical attention. *Hinthorn*, 151 Ill. App. 3d at 1009.

Plaintiff here argues that the trial court placed a great deal of emphasis on the fact that he had only complained to his employer rather than exhausting his administrative remedies under the Act. Plaintiff would have this court conclude that because the *Hinthorn* court found that the complaint in that case adequately stated a cause of action even though the plaintiff had only requested that her employer provide her with medical aid, this court should similarly find his complaint sufficient even though he had only threatened to take legal action.

However, as defendants point out, section 8 of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8) specifically requires an employer to make medical services available to employees who are injured while in the course of their employment, while plaintiff in the instant case, by contrast, does not point to any specific right that he was exercising under the Wage Collection and Payment Act. During oral argument plaintiff referred generally to sections 3 and 4 of the Act, which state in pertinent part:

"Sec. 3. Every employer shall be required, at least semimonthly, to pay every employee all wages earned during the semi-monthly pay period. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1939, may be paid once a month. Commissions may be paid once a month.

Sec. 4. All wages earned by any employee during a semimonthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages are earned. All wages paid on a daily basis shall be paid insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1938, may be paid on or before 21 calendar days after the period during which they are earned.

The terms of this Section shall not apply, if there exists a valid collective bargaining agreement which provides for a different date or for different arrangements for the payment of wages." Ill. Rev. Stat. 1985, ch. 48, pars. 39m—3, 39m—4.

██ █ Since plaintiff cited this specific reference for the first time only in oral argument, we deem the issue to have been waived for purposes of review. (*Board of Education v. Kusper* (1982), 92 Ill. 2d 333, 442 N.E.2d 179.) However, even if we assume *arguendo* that the issue was not waived, we find nothing in the sections of the statute cited, nor anything in the Illinois Department of Labor's Rules Regulating Deductions From Wages, to substantiate plaintiff's reliance on the Act in the instant situation.

Plaintiff and defendant had a written agreement that provided for the payment of commissions. There is no disagreement between them as to whether or not a setoff *could* be made as against commissions if a customer returned merchandise; the dispute arose because their agreement did not specifically delineate *when* such a setoff was to be made. As we have previously noted, this case involves the interpretation of a written agreement between two parties, which can hardly be classified as an issue which "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer v. International Harvester Co.*, 85 Ill. 2d at 130.

As the supreme court stated in *Barr v. Kelso-Burnett Co.* (1985),

106 Ill. 2d 520, 478 N.E.2d 1354:

> "The fact that a constitutional or statutory provision is cited in the complaint, however, does not give rise to a retaliatory-discharge cause of action. The test for determining if the complaint states a valid cause of action is whether the public policy clearly mandated by the cited provisions is violated by the plaintiff's discharge." 106 Ill. 2d at 527.

The court in *Barr* also reaffirmed the common law doctrine regarding the termination of at-will employees and warned against too broad a reading of the comparatively new trot of retaliatory discharge when it stated:

> "Contrary to plaintiffs' assertion, however, this court has not, by its *Palmateer* and *Kelsay* decisions, 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy." 106 Ill. 2d at 525.

Thus far, Illinois courts have applied the tort of retaliatory discharge in only two situations: where the discharge stems from asserting a workers' compensation claim and where the discharge is for certain activities which some cases and commentators refer to generally as "whistle-blowing." (*Lemon v. Ward* (N.D. Ill. 1985), 625 F. Supp. 1110, 1117; see generally Cosgrave & Zwick, *Identifying Public Policy in Retaliatory Discharge Cases in Illinois*, 1988 Ill. B.J. 506; Yonover, *Retaliatory Discharge in Illinois: Recent Developments*, 61 Chi. Kent L. Rev. 671 (1985); Green, *Retaliatory Discharge: Where is this Tort Going?*, CBA Record 13 (March 1987).) We have not been presented with a set of facts which would justify our expanding the frontiers of the doctrine of retaliatory discharge in the instant case.

Accordingly, for the reasons expressed, we affirm the circuit court of Cook County.

Affirmed.

HARTMAN, P.J., and BILANDIC, J., concur.