NO. 4-97-0020

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DENNIS CLEMONS, ) Appeal from

Plaintiff-Appellee and Cross- ) Circuit Court of

Appellant, ) McLean County

v. )    No. 95L12

MECHANICAL DEVICES, CO., )         

Defendant-Appellant and Cross-) Honorable

Appellee. ) W. Charles Witte,

) Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court: 

In January 1995, plain­tiff, Dennis Clemons, filed a com­plaint against defendant, Mechanical Devices, Company (Me­chan­i­cal), alleging that Mechanical had wrongfully discharged him in retali­ation for his filing a workers' compensation claim.  In October 1996, a jury returned a verdict for Clemons and against Mechani­cal and awarded him compensato­ry damages of $63,520.23.  

Mechani­cal appeals, arguing that the trial court erred by (1) admitting evidence regard­ing the Illi­nois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 
et
 
seq
. (West 1994)) and instruct­ing the jury on portions of that act; (2) allow­ing a lay witness to inter­pret statutory law; (3) allow­ing Clemons to amend his complaint follow­ing the close of evi­dence; (4) denying Mechan­ical's motion for judgment on the grounds of 
res
 
judica­ta
; (5) denying Mechani­cal an opportu­nity to cross-examine Clemons as to his testimony at an administrative hearing; (6) refusing to allow a witness to testify regarding payments made by Clemons' health insurance compa­ny; (7) refusing to give Mechanical's nonpattern jury instruction defining "at will" employment to the jury; and (8) allow­ing the jury to consider emotional distress as an element of damages.  Mechanical also argues that the verdict was against the mani­fest weight of the evidence.

Because we agree with Mechanical's first argument--namely, that the trial court erred by admitting evidence regard­ing the Wage Act 
and in­struct­ing the jury on por­tions of that act--we reverse and remand for a new trial.

I. BACKGROUND

In January 1995, Clemons filed a com­plaint against Mechanical, alleging that Mechanical had wrongfully discharged him in retaliation for his filing a workers' compensation claim.  This case was tried before a jury during Septem­ber and October 1996, and the evi­dence showed the follow­ing.  Mechan­ical, located in Bloomington, Illi­nois, did design, engineering, and machine shop work. 

In August 1988, Clemons began working at Mechanical as a machine operator.  He told Mechanical's staff that he had previ­ous­ly had back surgery.  On June 1, 1989, Clemons injured his back at work while lifting machine parts.  He report­ed the injury to his foreman, Clarence Hatfield, and the follow­ing day (at the direc­tion of Irene Sperry, a co-owner of Mechanical), he saw Dr. Larry Nord, who pre­scribed pain medica­tion.  Although Nord advised Clemons not to return to work, he did so that same day and worked the rest of June without further injury.  Mechanical's workers' compensa­tion carrier processed and paid the bills in­curred as a result of the June 1989 injury.   

On July 1, 1989, Clemons heard his back "pop" while he was working, yet he worked the remain­der of his shift.  Upon leaving work that day, he told Hatfield that his back was "still bother­ing" him and he was going to take it easy over the weekend.  Hatfield testi­fied that he recalled Clemons report­ing the June 1989 incident; however, he did not recall Clemons reporting an injury on July 1, 1989.  Linda Fillingham, Mechanical's office manager, testified that she did not receive notice on July 1, 1989, that Clemons injured himself.  Clemons testified that he stayed flat on his back "the whole week­end," and his back pain was in the same place as it was after the June 1989 injury. 

On Monday, July 3, 1989, Clemons' back "popped" while he was bending over to tie his shoes at home.  He telephoned  Fillingham and told her that he was not coming to work because he hurt his back while tying his shoes.  Fillingham told him that she would send him a health insurance form to complete.  Clemons testified that he had a conversation with Irene, who told him that she "knew this [(the July 1989 injury)] was not workmen's comp[ensation] and if [he] filed it that way, [he] would be discharged."  Clemons also stated that he believed Irene because "she doesn't say anything without meaning it."  At some point after speak­ing with Irene, Clemons (with his wife's assis­tance) com­plet­ed the health insurance form, signed it, and re­turned it to Mechan­ical.  The form, as filled out by Clemons and his wife on July 13, 1989, indicated that the July 1989 injury was not work relat­ed.   

Clemons also stated that someone from Mechan­i­cal called Nord's office and told Nord's secre­tary not to file the July 1989 injury as a workers' compen­sation claim.  Fillingham acknowledged that she had a telephone conver­sation with Nord on July 10, 1989, during which she told him to keep his records straight between the June 1989 injury (which was being processed as a workers' compen­sa­tion claim) and the July 1989 injury (which was being pro­cessed by Mechanical's health insur­ance company).    

Clemons' wife, Janetta, testified that on July 3, 1989, she heard "a loud pop" from Clemons' back as he was prepar­ing to go to work.  Later that same day (after Clemons spoke with Fillingham), they re­ceived a tele­phone call from Irene.  When Janetta told Irene that Clemons was not avail­able, Irene said that she did not like "to get the wives involved in things like this" and hung up.

Clemons returned to work on Thursday, July 27, 1989.  He worked that day and Friday, July 28, 1989.  He previously had elected to take the next week (July 29, 1989, through August 4, 1989) as a vacation week.  

On August 2, 1989, Clemons talked with an attorney, Kevin Miller, at the Janssen Law Center (Janssen).  On that same day, Clemons signed a blank workers' compensation application in Miller's office.  Miller testi­fied that he tele­phoned Mechan­i­cal that same day and asked the identi­ty of the company's workers' compen­sa­tion carrier.  Someone at Mechanical told him that such a request must be submitted in writing.  Janssen's subpoenaed tele­phone records did not show that Miller made a telephone call to Mechan­ical.  However, Miller stated that all of the telephone records may not have been produced.  Miller also stated that Clemons was hesitant to file a workers' compensation claim; nonetheless, Miller proceeded with the claim on August 2, 1989.

On August 4, 1989, Clemons went to Mechanical and told them that he wanted his paycheck for Thursday, July 27, 1989, and Friday, July 28, 1989.  He was told that he would be paid for those two days on August 11, 1989, in the following week's regular check, thus making a full week's check.  This was the same way vacation had been paid to all Mechanical employees for previous vacation periods.  Mechani­cal paid its employees on Fridays for the previous Thurs­day through Wednes­day pay period and paid them for vaca­tions one week in ad­vance.  Miller called and told someone at Mechanical that they could not hold the two days' pay.  Fillingham told Miller that Clemons could receive a pay­check for those days, but if he took his pay in a manner differ­ent from all other employ­ees, he would no longer be em­ployed by Mechanical.  Fillingham also testi­fied that Clemons quit when he chose to be paid differ­ently from all other employ­ees and he was not fired because he re­tained an attorney to file a workers' compen­sation claim.    

Barb Gullett, Nord's receptionist, testified that when Clemons came to Nord's office for the June 1989 injury, he filled out a workers' compensation patient questionnaire.  The first bill sent out by Nord's office had a "WC" (workers' compen­sa­tion) desig­na­tion.  A bill dated July 27, 1989, also con­tained a "WC" designa­tion, but Gullett had crossed through that entry and written "personal injury 7-3-89."  Gullett stated that Nord gave her that informa­tion.  Prior to the July 10, 1989, telephone call with Fillingham, all of Nord's records contained a "WC" designa­tion.  After the phone conversation, all of the records relating to the July 1989 injury were changed to reflect a personal injury designation. 

On August 8, 1989, Mechanical received an application for adjustment of claim stating that the July 1989 injury was work related.  At that time, Fillingham put the health insurance forms on hold until she could determine whether the injury was work related.  She also stated that she voided some of the health insurance checks and sent letters to health providers indicat­ing that Mechanical would not pay any health-related medical bills.  In her testi­mo­ny during Mechanical's case in chief, Fillingham stated that she had incorrectly testified that Mechanical had paid none of Clemons' health-related medical bills because she previously did not have access to all of the pertinent records.  She further stated that when Clemons submit­ted bills to Mechan­i­cal for the July 1989 injury, Mechanical's health plan paid them (except for Clemons' deduct­ible and co-pay portions).  Mechan­i­cal did not pay other medical bills which were not submit­ted to it. 

After the Industrial Commission denied his workers' compen­sa­tion claim for the July 1989 injury, Clemons resub­mitted his bills to Mechanical's health insurance provid­er.  According to Clemons, Mechanical never submitted the bills to its health insur­ance compa­ny.   

Randy Griffin, a former Mechanical employee, testified that he sustained a hernia while lifting a block at work.  He reported his injury to Mechanical, and it instructed him to complete a health insurance form.  Fillingham subsequently requested that he write a statement that his injury did not occur at work.  Griffin refused to do so because he be­lieved it hap­pened at work.  Griffin stated that he never had any intention of filing a workers' compensation claim; however, he did not want to write the requested statement.  That same day, Irene told him he was no longer needed as an employee. 

On this evidence, the jury returned a verdict for Clemons and against Mechani­cal and awarded him compensato­ry damages of $63,520.23.  

II. RELEVANCE OF THE WAGE ACT

Mechanical first argues that the trial court erred by admitting evidence regarding the Wage Act 
and in­struct­ing the jury on portions of that act.  Specif­ically, Mechanical contends the Wage Act was irrele­vant to the issues in this case.  In re­sponse, Clemons argues that evidence regard­ing the Wage Act was relevant, not because he based his claim upon a violation of the Wage Act, but because Mechani­cal proffered as a defense that Clemons demanded that he be paid differently from all other employees.  We con­clude that evidence regarding the Wage Act was wholly irrele­vant to the issues in this case.

A. 
Relevance of the Wage Act to Clemons' 

Claim of Retaliatory Discharge

Clemons' initial complaint alleged that "in retali­ation for filing the worker's compensation claim, [Mechani­cal] wrong­fully discharged [Clemons]."  Clemons' amended com­plaint (filed after the close of all evidence) alleged, in relevant part:

"10. *** [Mechanical] intentionally in­ter­fered with and restrained [Clemons'] rights under the Workers' Compensation Act in viola­tion of 820 ILCS 305/4(h) [(West 1994)].

* * *

13. *** [I]n retaliation of [Clemons'] exercise of his statutory rights, [Mechani­cal] wrongfully discharged [Clemons]."

During trial court arguments on Clemons' motion for leave to file an amended complaint, he stated as follows:

"That [(the Wage Act)] is not what we are alleging in this case; that is what [Me­chani­cal] is alleging as [its] reason for termi­nating [Clemons].  Our complaint alleges that [Clemons] was terminated in retaliation for his filing of a workers' compensation claim.  The [Wage Act] came up *** as Mechan­ical Devices' defense in this case."

Prior to grant­ing Clemons leave to file an amended com­plaint, the court specifically noted that the "statutory rights" referred to in paragraph 13 of the amended complaint "are in fact the workmen's comp[ensation] statutory rights."  

Thus, the 
only
 allegation of retal­ia­tory dis­charge properly before the jury involved Clemons' filing a workers' compen­sa­tion claim.  To prove a retal­ia­tory dis­charge for filing a workers' compensa­tion claim, a plain­tiff must show that (1) he was an employee before the injury; (2) he exercised a right granted by the Workers' Compensation Act (820 ILCS 305/1 
et
 
seq
. (West 1994)); and (3) he was dis­charged and the dis­charge was causally related to his filing a claim under the Workers' Compen­sa­tion Act.  
Gonzalez v. Prestress Engineer­ing Corp.
, 194 Ill. App. 3d 819, 823, 551 N.E.2d 793, 796 (1990).
  
Accord­ingly, Clemons did not have to show that Mechan­i­cal had violated the Wage Act in order to prove a retalia­tory discharge for filing a workers' compen­sation claim.

B. 
Relevance of the Wage Act to Mechanical's Defense

Although Clemons agrees that he did not allege that Mechanical wrongfully discharged him in violation of the Wage Act, he nonetheless contends that evi­dence regard­ing that act and whether Mechan­ical violated it was relevant because Mechani­cal proffered as a defense that Clemons ended his employ­ment with Mechanical as a result of his demand that he be paid differently from other employ­ees.  We dis­agree.

As Clemons correctly points out, in 
Miller v. J.M. Jones Co.
, 225 Ill. App. 3d 799, 803, 587 N.E.2d 654, 658 (1992), this court discussed the three-tier allocation of proof in Civil Rights Act cases (42 U.S.C. §2000e 
et
 
seq
. (1994)), as described by the Supreme Court in 
McDonnell Douglas Corp. v. Green
, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), although in 
Miller
 we called it the "standard of proof."  In 
Miller
, we noted that some courts utilize that standard in retal­ia­to­ry discharge cases.  Under the three-tier allocation of proof, the plain­tiff makes out a minimal 
prima
 
facie
 case of retaliatory dis­charge.  Once the plaintiff does this, the burden shifts to the defendant to rebut the 
prima
 
facie
 case by present­ing some legitimate, nonretaliatory reason for the plaintiff's discharge.  If the defen­dant meets his burden, the pre­sump­tion raised by the 
prima
 
facie
 case is rebut­ted, and the plain­tiff must satisfy the ulti­mate burden of proof by showing that the defendant's reason for the discharge is pretextual.  See 
Miller
, 225 Ill. App. 3d at 803, 587 N.E.2d at 658.  

In 
Miller
, however, this court neither applied nor adopted the three-tier allocation of proof in retaliatory dis­charge cases.  To the extent that other courts have adopted that allocation of proof in such cases (see 
Hugo v. Tomaszewski
, 155 Ill. App. 3d 906, 508 N.E.2d 1139 (1987); 
Bragado v. Cherry Electri­cal Prod­ucts Corp.
, 191 Ill. App. 3d 136, 547 N.E.2d 643 (1989)), we decline to follow them.  In the context of a retal­ia­tory dis­charge claim, it would simply make no sense to 
require
 the defendant to put forth a legitimate, nonretaliatory reason for its discharge of the plaintiff.  As our supreme court wrote in 
Hartlein v. Illi­nois Power Co.
, 151 Ill. 2d 142, 159, 601 N.E.2d 720, 728 (1992): 

"Despite the revolutionizing effect of 
Kelsay
[
v. Motorola, Inc.
, 74 Ill. 2d 172, 384 N.E.2d 353 (1978)], the common law doctrine that an em­ployer may discharge an employ­ee-at-will for 
any
 
reason
 or for 
no
 
reason
 re­mains the law in Illinois.  [Citation.]  
Kelsay
 only ex­cepts discharges which violate a clearly mandated public policy."  (Em­pha­sis add­ed.) 

In 
Kelsay
, the supreme court first recog­nized the tort of retal­iatory discharge as an excep­tion to the general rule that "at-will" employment is terminable at any time for any reason or no reason.  

In addition, as this court wrote in 
Foiles v. North Greene Unit District No. 3
, 261 Ill. App. 3d 186, 188-89, 633 N.E.2d 24, 26 (1994), quoting 30 C.J.S. Employer-Employee Rela­tionship §35, at 67, §40, at 70-71 (1992): 

"'[A]t common law the right of the employer to terminate the em­ploy­ment is 
unconditional
 and 
abso­lute
.'

* * *

'[A]n employment for an in­def­i­nite term may be terminated at the will of either party, re­gard­less of the length of service, 
for or 
with­out
 
cause
, and 
without
 
giv­ing
 
any
 
rea­son
 
or
 
explanation
 therefor ***.'"  (Emphasis added.) 

Because the common law doctrine of employment at will continues to be the law of this State, we hold that the three-tier allocation of proof that applies in the Civil Rights Act cases does not apply in the context of retaliatory dis­charge claims.  Thus, the defendant in a retalia­tory discharge action is not required to put forth evi­dence of a legitimate, nonretalia-tory reason (or, for that matter, 
any
 reason) for its dis­charge of the plain­tiff.  To hold other­wise would essen­tially abrogate the common law doctrine of employment at will.   

However, the defen­dant 
may
 
choose
 to provide a reason for its discharge of the plain­tiff.  The supreme court has held that "[t]he element of causa­tion is not met if the employer has a valid basis, which is not pretextual, for dis­charging the employ­ee."  
Hartlein
, 151 Ill. 2d at 160, 601 N.E.2d at 728.  In this regard, we reject Clemons' contention that the causation element is satisified merely because the defen­dant states that it fired the plaintiff for an invalid (illegal) reason unrelated to the retal­ia­to­ry discharge claim.  Considering that (1) a retal­ia­to­ry dis­charge claim is a narrowly circum­scribed excep­tion to the common law doctrine of employment at will, and (2) the ultimate issue con­cerning the causation element is the employer's 
motive
 for discharging the employee (see 
Hartlein
, 151 Ill. 2d at 163, 601 N.E.2d at 730), we hold that a "valid basis" means valid 
in
 
the
 
context
 
of
 
plaintiff's
 
claim
 
of
 
retalia­tory
 
dis­charge
 
for
 
plaintiff's
 
having
 
filed
 
a
 
claim
 
under
 
the
 
Workers'
 
Compensation
 
Act
.  

Such a valid basis may indeed be "inval­id" in other con­texts.  For example, a defendant may proffer as a reason for its dis­charge of a plain­tiff-employee that the employ­ee was dis­charged because of (1) his age (see 
Mein v. Masonite Corp.
, 124 Ill. App. 3d 617, 618, 464 N.E.2d 1137, 1139 (1984) (where the court held that plaintiff could not state an indepen­dent cause of action for wrongful discharge on the basis of age because of the comprehen­sive remedies provid­ed in the Illinois Human Rights Act (775 ILCS 5/1-101 
et
 
seq
. (West 1994)))); (2) the employee's gender (actionable pursuant to the Civil Rights Act of 1964 as amended by the Equal Employment Opportunity Act of 1972 (42 U.S.C. §2000e (1994))); or (3) the employee's dis­abil­i­ty (ac­tion­able pursuant to the Illinois Human Rights Act (see 775 ILCS 5/1-101 
et
 
seq
. (West 1994))).  Thus, the defendant in a retalia­to­ry discharge action--if it so chooses--may provide 
any
 reason for its dis­charge of the plain­tiff, so long as the reason is not part of the plaintiff's claim of retalia­tory dis­charge for his having filed a workers' compensation claim.  

Applying these principles to the present case, Mechani­cal was not required to provide any reason for its discharge of Clemons.  However, it chose to proffer a reason--namely, that Clemons demanded to be paid differently from all other Mechanical employees and contrary to the manner in which employees always had been paid for weeks partially worked that abutted vaca­tion weeks.  That reason was "valid" in the 
context of a retalia­tory discharge claim.  Whether Mechanical was violating the Wage Act (see 820 ILCS 115/1 
et
 
seq
. (West 1994)
) is wholly irrele­vant to the trier of fact's ultimate causation determina­tion--namely, whether Mechan­i­cal wrongfully discharged Clemons 
for
 
filing
 
a
 
workers'
 
compen­sa­tion
 
claim
.  

In this case, the trial court repeatedly allowed in testi­mo­ny regarding the Wage Act, including erroneously allowing Fillingham to read and interpret portions of the Wage Act to mean that Mechanical's method of payment violat­ed the Wage Act.  See 
Town of the City of Bloomington
 v. Bloomington Township
, 233 Ill. App. 3d 724, 735, 599 N.E.2d 62, 69 (1992) ("A court should not permit opinion on a ques­tion of law [citations] unless the court is dealing with a ques­tion of foreign law"); see also 
Magee v. Huppin-Fleck
, 279 Ill. App. 3d 81, 86, 664 N.E.2d 246, 249 (1996) (expert testimony con­cerning statutory interpretation is not proper, even if the witness is an attorney).  Because the Wage Act is irrele­vant to the issues in the present case, we hold that the court clearly abused its discre­tion by allowing in any testimony re­garding that act.  See 
Gill v. Foster
, 157 Ill. 2d 304, 312-13, 626 N.E.2d 190, 194 (1993) (a reviewing court will not reverse a trial court's admis­sion of evidence on relevance grounds absent a clear abuse of discretion). 

C. 
Prejudice to Mechanical

Mechanical further contends that the admission of the evi­dence regarding the Wage Act--particularly when viewed togeth­er with the trial court's instructing the jury on that act and Clemons' state­ments during closing argument--"served only to confuse the jury and severely prejudiced [Mechanical]."  We agree.

The trial court instructed the jury (at Clemons' request) essentially as follows.  The Wage Act provid­es that 

all wages earned by an employee during a weekly pay period shall be paid no later than seven days after the end of the weekly pay period in which the employee earned the wages.  Further, any employ­er who knowing­ly dis­charges or discrim­inates against an employee because that employee (1) has complained to the employ­er, the State Director of Labor, or his authorized repre­senta­tive, that the employer has not paid him in accordance with the Wage Act, or (2) has insti­tuted a proceed­ing under or related to the Wage Act, or (3) has testi­fied or is about to testify in an investiga­tion or proceed­ing under the Wage Act, is guilty, upon convic­tion, of a Class C misde­meanor.

This instruction was a modified version of Illi­nois Pattern Jury Instructions, Civil, No. 60.01 (3d ed. 1995) (here­inafter IPI Civil 3d) and, as such, should not be given unless some evidence existed to support a finding that the defendant's viola­tion of the statute was the proximate cause of the plaintiff's injury.  
French v. City of Springfield
, 65 Ill. 2d 74, 81, 357 N.E.2d 438, 441-42 (1976); see also IPI Civil 3d No. 60.01, Notes on Use (which provides that "[t]his instruc­tion should be given only where the evidence would support a finding that the injury complained of was proximately caused by a viola­tion of a statute").  

Because the Wage Act is irrelevant to the issues in this case, this in­struc­tion may have con­fused the jury as to the issues before it and preju­diced Mechani­cal in its defense--which was that Clemons left because of a dispute over how Mechani­cal paid his wages.  Thus, it was critical to Mechan­ical's defense that the jury under­stand that the only determi­na­tion it needed to make regard­ing Mechani­cal's payment method was whether Clemons' demand to be paid differently than other employ­ees constituted Mechanical's motive for dis­charg­ing him.  

In addition, the effect of this errone­ous in­struc­tion was height­ened during closing argu­ment, when Clemons stated as follows:

"[Clemons' attorney]:  If Mechanical Devices starts discharging their at-will employees because of the color of their skin, they are liable.  If they start discharging their employees for their gender, they are liable.  If they start discharging their employees in 
violation
 
of
 
Illinois
 
statute
, 
they
 
are
 
liable
.  It is as simple as that.  
Read
 
the
 
statute
."  (Emphasis added.)

This comment--which the jury could easily have understood to be a reference to the Wage Act (the "statute" that the court quoted to the jury at Clemons' request)--may well have con­fused the jury regard­ing the issues before it and whether a violation of the Wage Act could support a finding of retaliato­ry discharge.

Under the circumstances of this case, we con­clude that the trial court's error in admitting evidence regard­ing the Wage Act and instructing the jury on that statute--when viewed togeth­er with Clemons' comments during closing argu­ment--seri­ous­ly preju­diced Mechan­i­cal in its defense so as to deprive Mechanical of a fair trial.  Accordingly, we reverse the judgment for Clemons and remand for a new trial.   

III. ISSUES ON REMAND

Although we have determined this case must be remanded for a new trial, Mechanical raises other issues that will likely arise on remand.  We address these issues separately. 

A. The Trial Court's Refusal To Allow Mechanical To Cross-Examine Clemons as to His Testimony at the DES Hearing 

Mechanical argues that the trial court erred by refus­ing to allow it to cross-examine Clemons regarding what he testified to at a hearing in 1989 before the Department of Employment Security (DES) on Clemons' claim for unem­ploy­ment compen­sa­tion.  We dis­agree.

Where the language expressed in a statute is clear and unambiguous, a court's proper function is to enforce the law as enacted by the legislature.  
Hinojosa v. Joslyn Corp.
, 262 Ill. App. 3d 673, 677, 635 N.E.2d 546, 549 (1994).  A court construing a statute should read it as a whole, give the statuto­ry language its plain meaning, and import to the statute the fullest possible meaning to which it is susceptible.  
Central Illinois Public Service Co. v. Illinois Commerce Comm'n
, 268 Ill. App. 3d 471, 484, 644 N.E.2d 817, 826 (1994).  Further, in 
Howard v. Forbes
, 185 Ill. App. 3d 148, 152, 541 N.E.2d 685, 688 (1989), this court held that "the court must enforce the statuto­ry privilege [of section 1900 of the Unemployment Insurance Act (Insurance Act) (Ill. Rev. Stat. 1987, ch. 48, par. 640)] as enacted without resort­ing to other inter­preta­tion ten­ets."

Section 1900(A) of the Insurance Act now pro­vides as fol­lows:

"Except as provided in this Section, information obtained from 
any
 
individual
 or employing unit during the administration of this Act shall:

1. be confidential,

2. not be published or open to public inspection,

3. not be used in any court in any pending action or proceeding,

4. not be admissible in evidence in any action or proceeding other than one arising out of this Act."  (Emphasis added.)  820 ILCS 405/1900(A) (West 1994).

We note that this section included the same language in its 1989 ver­sion, which was in effect at the time of the DES hearing.  See Ill. Rev. Stat. 1989, ch. 48, par. 640.  

Giving this statuto­ry language its plain and fullest possi­ble meaning, we conclude that "information obtained from 
any
 individ­ual" means just that and thereby prevents disclosure of informa­tion obtained from the claim­ant in any action or proceed­ing arising outside of the Insur­ance Act.  To the extent 
McMahon v. Richard Gorazd, Inc.
, 135 Ill. App. 3d 211, 224, 481 N.E.2d 787, 796 (1985), holds other­wise, we decline to follow it.  Thus, we conclude that cross-examination of Clemons regard­ing what he testi­fied to at the 1989 DES hearing is prohib­ited by section 1900(A) of the Insurance Act.  Accord­ingly, we hold that the trial court did not err by refus­ing to allow Mechanical to cross-examine Clemons as to his testimony at the 1989 DES hear­ing.

B. The Trial Court's Refusal To Allow a Witness To Testify

   Regarding Payments Made by Clemons' Health Insurance Company  

The material in this section is not to be published pursuant to Supreme Court Rule 23.  Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994.

Nonpublishable material under Supreme Court Rule 23 omit­ted.

C. The Trial Court's Refusal To Give Mechanical's Nonpattern

Instruction Defining "At Will" Employment to the Jury

The material in this section is not to be published pursuant to Supreme Court Rule 23. 

Nonpublishable material under Supreme Court Rule 23 omitted.

D. Punitive Damages     

The material in this section is not to be published pursuant to Supreme Court Rule 23. 

Nonpublishable material under Supreme Court Rule 23 omitted.

IV. CONCLUSION

For the reasons stated, we reverse and remand for a new trial consistent with the views expressed herein.

Reversed and remanded.    

 McCULLOUGH, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent.  I would affirm the judgment of the trial court.  

The Wage Act provides that "[a]ll wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned."  820 ILCS 115/4 (West 1994).  Clemons worked Friday, July 28, and Saturday, July 29.  The pay period that includ­ed those days ended Wednesday, August 2.  On the next payday, Friday, August 4, while he was on vacation, Clemons asked to be paid for July 28 and 29.  Mechanical responded that he would not be paid for those days until Friday, August 11.  Mechan­ical finally did pay Clemons on August 4, but dis­charged him that same day.  The Wage Act did not require that Clemons be paid on August 4, but the Wage Act did not allow Mechanical to wait until August 11.  

The trial court held that an illegal defense is no defense and allowed the jury to determine whether Mechanical's defense was an illegal defense, whether the Wage Act had been violat­ed.  If Mechan­i­cal had conced­ed that it had violated the Wage Act, the trial court appar­ent­ly would have kept out any evi­dence of that reason for firing Clemons, whether that evidence was presented by Clemons or by Mechanical.  In deter­min­ing that an illegal defense is no defense, the trial court relied in part upon our state­ment in 
Miller
 that the employer should adduce "some evi­dence of lawful motiva­tion for the chal­lenged action."  
Miller
, 225 Ill. App. 3d at 803, 587 N.E.2d at 658.  
Miller
, however, was refer­ring to the three-tier formula of the Civil Rights Act cases, which I agree should not be applied to retalia­tory dis­charge cases.  I also agree with the majority (slip op. at 13) that "valid basis" or "lawful motiva­tion," as used in earlier cases, simply meant a basis or motivation that would defeat a claim of retal­iatory discharge under Illi­nois law.   Neverthe­less, the question whether an illegal defense can be a defense in a retal­iatory discharge case must be ad­dressed.  Should an employer really be allowed to profit from its own illegal conduct and tell the jury, "I fired plain­tiff because he was black," or "I fired plaintiff because she was a woman"?  Such defenses are usually counterpro­ductive because they are offensive to juries, but in the present case the jury would not have known Mechanical's conduct was (arguably) illegal unless it were given that information.  The state­ment is some­times made that at common law an employ­ee at will can be dis­charged at any time, "for a good reason, a bad reason, or no reason at all."  
Ryherd v. General Cable Co.
, 124 Ill. 2d 418, 427, 530 N.E.2d 431, 435 (1988).  The fact that a partic­ular "bad reason" cannot be used offensively in a retaliatory discharge case, however, does not require that such "bad reason" be allowed to be used defen­sively.  It is possible to limit the employee's argument to the question whether he was fired in violation of the Workers' Compensation Act, without allowing the employer to argue the employee was fired because he was black, 
et
 
cetera
.  Of course, the failure to present a reason for dis­charge will make it diffi­cult for the employer to succeed.  See 
Wieseman v. Kienstra, Inc.
, 237 Ill. App. 3d 721, 733, 604 N.E.2d 1126, 1135 (1992) (Chapman, J., dissenting) (most cases find in worker's favor unless employ­er had a reason for discharge).  

Mechanical argues that an employer has other forums and remedies available if he or she is fired because of race, gender, age, disability, or in violation of the Wage Act.  It is common, however, for wrongful acts to carry collateral consequences.  The law is reluctant to allow a wrongdoer to profit from his own wrong, particularly where he seeks to enlist the aid of the court in doing so.  For example, the courts will not enforce a check given in payment of a gambling debt.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 119, 619 N.E.2d 732, 737 (1993).  The fact that other remedies exist is no answer to the ques­tion whether an illegal defense can be a defense. 

Mechanical argues that there can be no showing that the Wage Act has been violated without a labor board finding to that effect.  That is not correct.  Evidence of other crimes, wrongs, or acts may be admitted without showing that there has been a conviction.  The proponent must show that a crime took place and that the defendant committed it, but that proof need not be beyond a reasonable doubt, only by more than a mere suspicion.  
People v. Oaks
, 169 Ill. 2d 409, 454, 662 N.E.2d 1328, 1348 (1996).

Even if an illegal defense is a defense, I dis­agree with the majority's argument that Mechanical's viola­tion of the Wage Act was "wholly irrelevant."  Slip op. at 8.  The issue is whether Mechanical's motive was to discharge Clemons because of his workers' compensa­tion claim or whether the motive was to dis­charge him because of his complaints about being paid late (or perhaps both).  When a litigant argues it had a certain motive in performing an act, it is relevant that such motive would result in a viola­tion of the criminal law.  We should not assume that Mechan­ical is equally willing to engage in conduct that vio­lates the criminal law and conduct that does not.  The criminal code may be viewed as a standard of conduct by which most individuals and employers abide.  Evidence is rele­vant if it has any tenden­cy to make the exis­tence of any fact of conse­quence more or less probable.  Relevant evidence is admissible even when it is prejudicial to the oppo­nent.  See 
People v. Kidd
, 175 Ill. 2d 1, 37, 675 N.E.2d 910, 927 (1996) (gruesome photo­graphs).  Evidence of other crimes is admissible if it is relevant for any purpose other than to show propensity to commit crime.  
People v. Jones
, 156 Ill. 2d 225, 239, 620 N.E.2d 325, 330 (1993).  Mechan­i­cal should not be allowed to avoid the rele­vant impli­ca­tions of its actions just because those actions put Mechanical in a bad light.   The trial court took the position that only a violation of the Workers' Compensation Act, and not a violation of the Wage Act, could be a basis for recovery in a retaliatory discharge action.  Under that view, the evidence of a Wage Act violation was admis­sible for some purposes, but could not be the basis for a finding of liability or an award of damages, and a limiting instruction was necessary.  Defendant's jury instruction No. 40 would have told the jury that employment was presumed to be at will, that at-will employees could be terminated for any reason or no reason at all, and "if you find Dennis Clemons' filing of a workers' compensa­tion claim was not the determinative factor in Dennis Clemons' discharge, you must decide in favor of Mechanical Devices."  The jury instruction had some merit, al­though a better statement would have been whether the claim was "
a
 deter­mina­tive fac­tor."  The court did give defendant's jury in­struc­tion No. 10, listing the elements Clemons had to prove, includ­ing "that Dennis Clemons' filing of a claim under the Workers' Compensation Act resulted in his discharge from his employment."  A limiting instruction was necessary in this case, and non-IPI jury instruc­tions had to be given (there are no specif­ic instructions for retalia­tory discharge in IPI), but I cannot say that defendant's jury in­struction No. 40 would have im­proved upon the instructions already given.  Under defendant's jury instruction No. 10, defendant was free to argue to the jury that a violation of the Wage Act could not be a basis for liabil­ity and that the jury had to find that defendant intended to retali­ate for plaintiff's filing of a workers' compensation claim before plaintiff could recover.   

A major concern here is the argument that plain­tiff sand­bagged defendant, that the pleadings alleged a violation of the Workers' Compen­sation Act, but plain­tiff proved up a viola­tion of the Wage Act.  Under the facts of this case it would have been improper for plain­tiff to amend his pleadings to change theo­ries at the close of the evidence.  See 
Lee v. Chicago Transit Author­i­ty
, 152 Ill. 2d 432, 467-68, 605 N.E.2d 493, 508 (1992) (other party would be preju­diced or surprised by the proposed amend­ment).  The trial court made it clear, however, that it was not allow­ing a change of theories, that there was no retaliatory discharge action for a violation of the Wage Act.  Because there was no change of theories, the amendment was not particularly signifi­cant.  Defen­dant argues the jury was never­theless con­fused and impermissibly awarded damages for a viola­tion of the Wage Act.  The trial court recognized that an award on that basis would be improp­er and took the steps it deemed neces­sary to prevent it.  Defendant does not suggest other steps that should have been taken, except to argue that evidence of the Wage Act viola­tion should have been excluded entirely, with which I disagree.  If the evidence of the Wage Act violation is viewed, not as a change of theory, but as im­peachment of defendant's witnesses, there was no unfair prejudice or surprise in this case.  See 
Flynn v. Edmonds
, 236 Ill. App. 3d 770, 785, 602 N.E.2d 880, 889 (1992) (if impeaching informa­tion must be dis­closed before trial, witness will either not appear or will change testimony).  

Mechanical argues that its office manager, Fillingham, was improperly "allowed" to interpret statutory law.  It is cer­tainly improper for a witness to testify what the law is.  The jury takes its law from instructions given it by the judge, not from the testimony of witnesses.  See 
Bloomington
, 233 Ill. App. 3d at 735, 599 N.E.2d at 69.  When the issue is whether a party has know­ing­ly violat­ed a statute, however, it is appro­pri­ate to ask that party (1) whether it was aware of the statute, (2) is this a common stat­ute of which employers should be aware, (3) whether it agrees the statute was violated, and (4) how can it be said the statute was not violated when the statute provides X, and the facts are Y?  See 
Selby v. Danville Pepsi-Cola Bottling Co.
, 169 Ill. App. 3d 427, 437, 523 N.E.2d 697, 702 (1988).  If Clemons were really at­tempt­ing to have a witness inter­pret the law, it would be unlikely that he would use Mechanical's office manager as that wit­ness.               

Mechanical complains that the court read a portion of the Wage Act to the jury as a part of its instruc­tions, but assuming the Wage Act was relevant at all to the case, it had to be brought to the jury's attention in some manner.  The proper way for a jury to be told of the law that applies to the case is through the instructions given it by the court.  I do not consid­er the instruction given to be an IPI No. 60.01 instruction.  

Fillingham testified she voided some of the health insurance checks and sent letters to health providers indicating that Mechanical would not pay health-related medical bills.  That testimony shows malice on the part of Mechanical.  Clemons was entitled to payment of his bills from one source or the other, the health insurer or the workers' compensation insurer.  If the claim were later deter­mined to be job-related, the insurer would have been entitled to a credit for payments already made under the health policy.  When Fillingham returned to the stand, she changed her testimony and said that the medical bills were paid under the health policy.  Clemons testi­fied the bills were not paid and were turned over to a collec­tion agency.  Mechani­cal then attempted to show the bills were paid by the health insurer for Clemons' wife, after some period of time had elapsed.  I agree that testi­mo­ny was getting pretty far afield and the trial court acted within its discretion in exclud­ing it. 

It is not clear that the supreme court, when it is faced with the issue, will hold that firing an employ­ee who com­plains about a viola­tion of the Wage Act cannot give rise to a retal­iatory dis­charge action.  The Wage Act pro­vides:

"Any employer *** who knowingly dis-

charges or in any other manner know­ingly 

dis­crimi­nates against any employee because 

that employ­ee has made a complaint to his 

employer *** that he or she has not been 

paid in accor­dance with the provi­sions of 

this Act *** is guilty, upon convic­tion, of 

a Class C misde­mean­or."  820 ILCS 115/14(c) 

(West 1994).  

In 
Barr
 the plaintiffs alleged various constitu­tional rights were violat­ed when they were discharged for their activi­ties in connection with a labor dispute.  The supreme court contrasted those general allegations with 
Kelsay
, where "the public policy of allow­ing injured workers to freely file workmen's compensation claims was clearly mandated by the legis­lative enactment of the Workmen's Compensa­tion Act."  
Barr v. Kelso-Burnett Co.
, 106 Ill. 2d 520, 525-26, 478 N.E.2d 1354, 1356 (1985).  In the present case, the legis­la­ture has clearly indi­cated that it is con­trary to the public policy of the state to discharge workers who complain about violations of the Wage Act.  
Abrams v. Echlin Corp.
, 174 Ill. App. 3d 434, 528 N.E.2d 429 (1988), did not hold that viola­tions of the Wage Act may never be the basis of a retaliato­ry discharge action.  
Abrams
 affirmed the dismiss­al of the complaint before it because the plaintiff did not identify any provi­sions of the Wage Act that were violat­ed when the employer indicated it would set off commissions paid on returned merchan­dise.  
Abrams
, 174 Ill. App. 3d at 440, 528 N.E.2d at 433.  Plaintiff's right to commis­sions was not dealt with by the Wage Act, but by a private agreement between the parties.  
Kavanagh v. KLM Royal Dutch Airlines
, 566 F. Supp. 242 (N.D. Ill. 1983), is simi­lar.  In con­trast to 
Abrams
 and 
Kavanagh
, there is a section of the Wage Act that expressly prohibits what was done here.  It could be argued that the dispute whether Clemons would receive two days' pay on August 4 or on August 11 was trivial, but Clemons was fired because of that dispute, accord­ing to Mechan­i­cal.     

Complicated questions are presented by this case.  The trial court dealt with those questions as they arose, without the advantages of reflection that we have.  This was not a perfect trial, but the parties are not entitled to a perfect trial.  I cannot say the trial court abused its discre­tion in its rulings or that the jury's decision was contrary to the manifest weight of the evidence.  I would affirm.